```
 1              UNITED STATES DISTRICT COURT

 2            NORTHERN DISTRICT OF WEST VIRGINIA

 3  UNITED STATES OF AMERICA,

 4          Plaintiff,

 5            vs.              CRIMINAL ACTION NO.

 6                             1:19CR35

 7  QUIONTE CRAWFORD, a.k.a.,

 8          Defendant.

 9                    - - -

10        Proceedings had in the PLEA HEARING of the

11  above-styled action on June 20, 2019, before the HONORABLE

12  MICHAEL J. ALOI, MAGISTRATE JUDGE, at Clarksburg, West

13  Virginia.

14                    - - -

15      APPEARANCES:

16      FOR THE GOVERNMENT:

17          DAVID A. PERRI
            Assistant United States Attorney
18          Post Office Box 591
            Wheeling, West Virginia  26003
19

20      FOR THE DEFENDANT:

21          MATTHEW DELLIGATTI
            234 Adams Street - Suite 2
22          Fairmont, West Virginia  26554

23      The Defendant was present in person.

24      Proceedings recorded utilizing realtime translation.
        Transcript produced by computer-aided transcription.
25
```

Stacy Harlow, RVR-M, CVR-M, CM, RCP, RBC
P.O. Box 969 Clarksburg, West Virginia  26301  304.623.7154

2

```
 1                          INDEX

 2    WITNESSES CALLED ON BEHALF OF THE GOVERNMENT:

 3    LIEUTENANT GARY WEAVER

 4              Direct Examination by David Perri..................31

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                   P R O C E E D I N G S
 2  (Thursday, June 20, 2019, at 1:01 P.M., the defendant is
 3  present.)
 4             THE COURT:  If the clerk would please call the next
 5  case.
 6             THE CLERK:  This is the matter of United States of
 7  America versus Quionte Crawford, a.k.a. Kayla Stevens, a.k.a.
 8  Quionte Jordan Crawford, case number 1:19CR35.  The defendant
 9  is present in person.  This matter comes on for an initial
10  appearance on an Information, arraignment, and plea hearing.
11             Will counsel please note their appearance for the
12  record.
13             MR. PERRI:  David Perri, for the United States.
14             MR. DELLIGATTI:  Matt Delligatti, for the defendant.
15             THE COURT:  Thank you, counsel.
16             Mr. Crawford, we're here today for an initial
17  appearance, an arraignment, and then also a plea to an
18  Information that's been filed against you in this matter.
19             So, Mr. Crawford, can you read, write, and understand
20  English?
21             THE DEFENDANT:  Yes, sir.
22             THE COURT:  Now, Mr. Crawford, my name is Michael
23  John Aloi; I am a United States Magistrate Judge, here for the
24  Northern District of West Virginia.
25             At this time, I would ask the clerk to please swear
```

1   in Mr. Crawford.

2           (QUIONTE CRAWFORD, THE DEFENDANT, WAS SWORN.)

3           THE COURT:  Now, Mr. Crawford, are you citizen of the

4   United States?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  Mr. Crawford, you are charged in Counts 1

7   through 5 of an Information with enticement of a minor.  Mr.

8   Crawford, do you have that Information in front of you?

9           THE DEFENDANT:  Yes, sir.

10          THE COURT:  Now, I'm going to go over it with you.

11  Count 1 charges you with enticement of a minor, and it

12  indicates that in or about May 2018, in Marion County, in the

13  Northern District of West Virginia, that you, Mr. Crawford --

14  how do you say your first name, by the way?

15          THE DEFENDANT:  Quionte.

16          THE COURT:  Quionte?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Okay.  So it indicates you, Mr. Crawford,

19  did knowingly use a facility and means of interstate commerce

20  to persuade, induce, and entice an individual, who had not

21  attained the age of 18, to engage in sexual activity for which

22  any person could be charged with a criminal offense.  You did

23  so -- you did knowingly use your smart phone to -- and the

24  Internet to persuade, induce, entice, and coerce an individual

25  who you knew to be a minor, and who was designated as John

1  Doe-1, a 14-year-old boy, to engage in sexually explicit

2  conduct for the purpose of producing images and videos of such

3  conduct, and that -- for which you, Mr. Crawford, could be

4  charged with a criminal offense, that being sexual exploitation

5  of children, in violation of the law.

6          Now, Count 2, Mr. Crawford, also charges you with

7  enticement of a minor, and this indicates that on or about

8  November 2017, in Marion County, in the Northern District of

9  West Virginia, that you, Mr. Crawford, did knowingly use a

10  facility and a means of interstate commerce to persuade,

11  induce, entice an individual, who did -- had not attained the

12  age of 18, to engage in any sexual activity, for which any

13  person could be charged with a criminal offense, which is to

14  say that you knowingly used your smartphone and Internet to

15  persuade, induce, entice, and coerce an individual, who you

16  knew was a minor, and who was designated herein as John Doe-2,

17  a 15-year-old boy, to engage in sexually explicit conduct for

18  the purpose of producing images and videos of such conduct for

19  which you, Mr. Crawford, could be charged with a criminal

20  offense, that being sexual exploitation of children, in

21  violation of the law.

22          Count 3, Mr. Crawford, charges you with enticement of

23  a minor.  This indicates from on or about December 2017, to on

24  or about January 2018, Marion County, which is in the Northern

25  District of West Virginia, that you, Mr. Crawford, did

 1   knowingly use a facility and means of interstate commerce to

 2   persuade, induce, and entice an individual who had not attained

 3   the age of 18 years to engage in sexual activity, for -- which

 4   any person could be charged with a criminal offense, which is

 5   to say that you knowingly used your smartphone and Internet to

 6   persuade, induce, entice, and coerce an individual, who you

 7   knew was minor, and who was designated as John Doe-3, a

 8   15-year-old boy, to engage in sexually explicit conduct for the

 9   purpose of producing images and videos of such conduct, for

10   which you could be charged with a criminal offense, that being

11   sexual exploitation of children, in violation of the law.

12           Now, Count 4, Mr. Crawford, charges you with

13   enticement of a minor.  This indicates that from on or about

14   March 2018, to in or about April 2018, in Marion County, in the

15   Northern District of West Virginia, that you, Mr. Crawford, did

16   knowingly use a facility and means of interstate commerce to

17   persuade, induce, and entice an individual, who had not

18   attained the age of 18 years, to engage in any sexual activity

19   for which any person could be charged with a criminal offense.

20   That is that you knowingly used your smartphone and Internet to

21   persuade, induce, entice, and coerce an individual, who you

22   knew to be a minor, and who is designated as John Doe-4, a

23   15-year-old boy, to engage in sexually explicit conduct for the

24   purpose of producing images and videos of such conduct, for

25   which you, Mr. Crawford, could be charged with a criminal

1   offense, to-wit:  sexual exploitation of children, in violation

2   of the law.

3           Now, Count 5, Mr. Crawford, charges you with

4   enticement of a minor.  And this indicates that on or about

5   December 2018, in Marion County, in the Northern District of

6   West Virginia, that you, Mr. Crawford, did knowingly use a

7   facility and means of interstate commerce to persuade, induce,

8   and entice an individual, who had not attained the age of 18

9   years, to engage in any sexual activity for which any person

10  could be charged with a criminal offense, that is to say you

11  used your smartphone and Internet to persuade, induce, entice,

12  and coerce an individual who you knew was a minor, and who is

13  designated as John Doe-5, a 15-year-old boy, to engage in

14  sexually explicit conduct for the purpose of producing images

15  and videos of such conduct for which you, Mr. Crawford, could

16  be charged with a criminal offense, and that being sexual

17  exploitation of children.

18          All five counts, Mr. Crawford, are violations of the

19  same law, that being sexual exploitation of children, Title 18,

20  U.S. Code, Section 2255(a).

21          Now, Mr. Crawford, the maximum penalty for the

22  violation of -- for this -- for the counts, and it would be for

23  each one -- is imprisonment of not less than 10 years, or life

24  in prison; a fine of $250,000, and a term of 5 years or

25  lifetime supervised release.

1        So is -- Mr.  Perri, is that a mandatory minimum of 10

2   years -- is that correct?

3             MR. PERRI:  It is, Your Honor.

4             THE COURT:  Okay.

5             What that means, Mr. Crawford, is that there is a

6   mandatory minimum of incarceration of not less than 10 years.

7   It could be to life, depending on how the judge sentences.

8              Now, Mr. Crawford, have you had an opportunity to

9   review this Information that I have just gone over with you?

10  Have you had the opportunity to review it with your attorney,

11  Mr. Delligatti?

12            THE DEFENDANT:  Yes, sir.

13            THE COURT:  And, Mr. Crawford, would you like for me

14  to read it again to you, or you --

15            THE DEFENDANT:  No, sir, I --

16            THE COURT:  -- agree to waive --

17            THE DEFENDANT:  I understand.

18            THE COURT:  Okay.  Thank you.

19            Now, Mr. Delligatti, it is my understanding Mr.

20  Crawford desires to plead guilty to the charges contained in

21  Counts 1 through 5 of the Information; is that correct?

22            MR. DELLIGATTI:  That is correct, Your Honor.

23            THE COURT:  Now, Mr. Crawford, do you understand that

24  you are under oath, you've taken an oath early on?

25            THE DEFENDANT:  Yes, sir.

1          THE COURT:  And if you answer any of my questions

2    falsely, your answers may later be used against you in another

3    prosecution for perjury or for making a false statement?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Now, Mr. Crawford, do you understand that

6    if you lie, it may result in a higher sentence for you?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Now, Mr. Crawford, during the course of

9    this hearing, I will be asking you several questions.  At any

10   point, you should feel free to ask questions, ask for an

11   explanation if you do not understand any of my questions, or

12   ask me to pause the proceedings so that you may have the

13   opportunity to discuss the matter with your attorney before

14   answering the question; do you understand that?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Would you state your full name for the

17   record, please?

18         THE DEFENDANT:  Quionte Jordan Crawford.

19         THE COURT:  And, Mr. Crawford, how old are you?

20         THE DEFENDANT:  I am 27.

21         THE COURT:  How much education have you had?

22         THE DEFENDANT:  High school; a little bit of college.

23         THE COURT:  Okay.  So you can you read, write, and

24   understand English?

25         THE DEFENDANT:  Yes.  Yes, sir.

1          THE COURT:  Now, Mr. Crawford, have you recently been

2     under the care of a doctor, psychiatrist, or other medical

3     professional for any serious physical or mental illness,

4     including addiction to drugs or alcohol?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  Now, are you currently using any form of

7     controlled substance, or any medication, or alcohol, that might

8     affect your ability to understand this proceeding?

9          THE DEFENDANT:  No.  All I take is insulin.  That's

10    it.

11         THE COURT:  Okay.

12         So, Mr. Delligatti, do you have any reason to

13    question the competence of your client, Mr. Crawford?

14         MR. DELLIGATTI:  No, Your Honor.

15         THE COURT:  Mr. Crawford, are you here today to enter

16    a guilty plea as part of a written Plea Agreement?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Mr. Crawford, I find that you are

19    competent and capable of entering an informed plea.

20         Now, Mr. Crawford, I am a United States Magistrate

21    Judge.  You're charged with a felony in this matter.  As such,

22    you have a right to have this plea taken by an Article III

23    Judge, sometimes called a District Judge.  And in this Court,

24    for you, that would be Judge Kleeh.  And he would also be your

25    sentencing judge.  Now, only you can give up that right, and I

1    can only hear your plea if you agree to it by signing a waiver.

2    Do you understand that, Mr. Crawford?

3                    THE DEFENDANT:  Yes, sir.

4                    THE COURT:  Now, -- and have you discussed that with

5    your attorney, Mr. Delligatti?

6                    THE DEFENDANT:  Yes, sir.

7                    THE COURT:  Now, Mr. Crawford, I have presented you

8    and Mr. Delligatti with a written waiver.  I would ask that you

9    read it before you sign it, --

10                   THE DEFENDANT:  Okay.

11                   THE COURT:  -- because I'll ask you if you read it.

12   And if you have any questions, please ask Mr. Delligatti.  If

13   it meets with your approval, you may sign the same, and we'll

14   continue.

15                   Thank you, Mr. Perri.

16                   Now, Mr. Crawford, I do have the original Waiver of

17   Article III Judge and Consent to Enter a Guilty Plea Before a

18   U.S. Magistrate Judge.  Did you sign the Waiver and Consent,

19   Mr. Crawford?

20                   THE DEFENDANT:  Yes, I did.

21                   THE COURT:  Did you read it before you signed it?

22                   THE DEFENDANT:  Yes, I did.

23                   THE COURT:  Did you discuss it with your, lawyer, Mr.

24   Delligatti?

25                   THE DEFENDANT:  Yes, sir.

 1                  THE COURT:  Did anyone force you to sign it?

 2                  THE DEFENDANT:  No, sir.

 3                  THE COURT:  Do you have any questions about it?

 4                  THE DEFENDANT:  No, sir.

 5                  THE COURT:  And, Mr. Delligatti, is it your

 6       understanding that your client does agree to the waiver?

 7                  MR. DELLIGATTI:  Yes, Your Honor.

 8                  THE COURT:  Now, Mr. Crawford, I'm going to find that

 9       you entered into the Waiver and Consent knowingly and

10       voluntarily, and I'm going to order that it be filed herein,

11       and we'll continue.

12                  I will note the signature of your attorney, Mr.

13       Delligatti, as well as the concurrence of the Government, by

14       its Assistant U.S. Attorney, Mr. Perri.

15                  Mr. Crawford, do you understand that you have a right

16       to be represented by counsel at every stage of these

17       proceedings against you, including sentencing, and that if you

18       cannot afford an attorney, you have the right to have one

19       appointed to represent you?

20                  THE DEFENDANT:  Yes, sir.

21                  THE COURT:  Mr. Crawford --

22                  And, Mr. Delligatti, do you, or any member of your

23       office or firm, represent anyone, including codefendants, who

24       might be interested in the outcome of this matter?

25                  MR. DELLIGATTI:  No, Your Honor.

                     Stacy Harlow, RVR-M, CVR-M, CM, RCP, RBC
           P.O. Box 969 Clarksburg, West Virginia  26301  304.623.7154

1          THE COURT:  Now, Mr. Crawford, do you believe that

2    you have had adequate time to discuss your case fully with your

3    attorney, Mr. Delligatti?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Has Mr. Delligatti been able to answer

6    your questions about how best to proceed in this case?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  And is there anything that your lawyer

9    has not done which you've asked him to do?

10          THE DEFENDANT:  No, sir.

11          THE COURT:  Are you completely satisfied with the

12   legal advice that you have received from Mr. Delligatti?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Now, Mr. Delligatti, during the time that

15   you've represented Mr. Crawford, has Mr. Crawford been

16   cooperative with you?

17          MR. DELLIGATTI:  Absolutely, Your Honor.

18          THE COURT:  And have you had adequate time to

19   discover the Government's case?

20          MR. DELLIGATTI:  Yes, I have, Your Honor.

21          THE COURT:  Have you had adequate time to discover --

22   I'm sorry.  Have you had adequate time to consider possible

23   defenses?

24          MR. DELLIGATTI:  Yes, Your Honor.

25          THE COURT:  And, Mr. Delligatti, do you know of any

1   viable defense to the charge in Counts 1 through 5 of the

2   Information?

3            MR. DELLIGATTI:  No, Your Honor.

4            THE COURT:  Now, Mr. Delligatti, have you had

5   adequate time to consider possible sentences?

6            MR. DELLIGATTI:  Yes, I have, Your Honor.

7            THE COURT:  And have you discussed all of these

8   issues with your client, Mr. Crawford?

9            MR. DELLIGATTI:  I have, Your Honor.

10            THE COURT:  Now, Mr. Crawford, the Government has

11   brought the charges against you in an Information, not an

12   Indictment.  Have you received a copy of the Information filed

13   against you?

14            THE DEFENDANT:  Yes, sir.

15            THE COURT:  And you've had the opportunity to read

16   it; is that correct?

17            THE DEFENDANT:  Yes, sir.

18            THE COURT:  Have you had the opportunity to review it

19   with Mr. Delligatti?

20            THE DEFENDANT:  Yes, sir.

21            THE COURT:  Would you like for us to go over that

22   again?  Are you satisfied you understand?

23            THE DEFENDANT:  I understand, sir.

24            THE COURT:  Okay.  Now, you're pleading guilty to

25   Counts 1 through 5 of the Information, and each count charges

1    you with a separate offense of enticement of a minor.  So, Mr.

2    Crawford, do you understand that you have a right to be charged

3    by a grand jury Indictment, because what you're pleading to,

4    they're all felonies.  Do you understand that?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  So do you understand for a felony, you

7    have a right to be charged by a grand jury Indictment, but you

8    can waive or give up that right and consent and agree to being

9    charged by an information?  And, again, that's the document you

10   have in front of you, which is filed by the U.S. Attorney.  Do

11   you understand that?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Do you understand that unless you waive

14   your right to an Indictment, the Government must present its

15   case to the grand jury and ask the grand jury to indict you?

16   Do you understand that?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  And do you understand that unless you

19   waive your right to an Indictment, you may not be charged with

20   a felony, unless a grand jury finds, by return of an

21   Indictment, that there is probable cause to believe that a

22   crime has been committed, and that you committed it.  Do you

23   understand that?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Do you understand that a grand jury is

1    composed of at least 16, but -- and not more than 23 persons,

2    and that at least 12 grand jurors must find that there is

3    probable cause to believe that you committed the crimes with

4    which you have been charged before you can be indicted?  Do you

5    understand that?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Now, do you understand, Mr. Crawford,

8    that the grand jury might or might not indict you?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Do you -- now, Mr. Crawford, have you

11   discussed the matter of waiving your right to a grand jury

12   Indictment with your attorney, Mr. Delligatti?

13             THE DEFENDANT:  Yes, I have.

14             THE COURT:  Do you understand your right to a grand

15   jury Indictment in this matter?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Have any threats or promises been made to

18   you, to induce you or convince you, or talk you into waiving

19   your right to an Indictment?

20             THE DEFENDANT:  No, sir.

21             THE COURT:  Mr. Delligatti, do you see any reason why

22   Mr. Crawford should not waive his right to an Indictment?

23             MR. DELLIGATTI:  No, Your Honor.

24             THE COURT:  Mr. Crawford, do you wish to waive your

25   right to a grand jury Indictment and proceed by Information in

1    this matter?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Now, Mr. Crawford, the Court has provided

4    you and your attorney with a waiver of your right to an

5    Indictment in this matter.  I want you to read it before you

6    sign it, and if it meets with your approval, you may do so, and

7    we'll continue.

8              MR. DELLIGATTI:  May I approach, Your Honor?

9              THE COURT:  Yes, you may.

10             MR. DELLIGATTI:  Thank you, Mr. Delligatti.

11             Now, Mr. Crawford, I have the original waiver of the

12   Indictment; did you sign the waiver, Mr. Crawford?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Did you read it before you signed it?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Did you discuss it with your attorney?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  Do you have any questions about it?

19             THE DEFENDANT:  No, sir.

20             THE COURT:  Okay.  Mr. Crawford, I am going to accept

21   your Waiver of Indictment as being knowingly and voluntarily

22   entered into, and I will order that it be filed herein.

23             Now, Mr. Delligatti, is there a proposed plea

24   agreement in this case?

25             MR. DELLIGATTI:  Yes, there is, Your Honor.

1        THE COURT:  Mr. Perri, would you please summarize the

2   contents of that agreement for the Court?

3        MR. PERRI:  Yes, Your Honor.  Paragraph 1 indicates

4   that the defendant, Mr. Crawford, will waive his right to have

5   his case presented to a federal grand jury, and plead guilty to

6   Count 1, Count 2, Count 3, Count 4, and Count 5 of the

7   Information filed in this District, charging him with

8   enticement of a minor, in violation of Title 18, United States

9   Code, Section 2422(b).

10       Paragraph 2 sets forth the maximum penalties to which

11  the defendant will be exposed by virtue of his plea of guilty.

12  The maximum penalty for Count 1, Count 2, Count 3, Count 4, and

13  Count 5, to which the defendant will be exposed, is

14  imprisonment for a period of not less than 10 years or life

15  imprisonment; a fine of $250,000; a term of 5 years or lifetime

16  supervised release.

17       It's further understood by the defendant that there

18  is a special mandatory assessment of $100 per count, which must

19  be paid.  And the defendant is also aware that unless he's

20  determined to be indigent, he will be required to pay an

21  additional special assessment of $5,000, pursuant to The

22  Justice for Victims of Trafficking Act.

23       Finally, the defendant understands that he may be

24  required by the Court to pay the cost of his incarceration,

25  supervision, or probation.

1           Paragraph 3 indicates that the defendant will be

2    forthright and truthful with regard to any and all inquiries

3    made of him; that he will provide signed, sworn statements;

4    that he will provide grand jury and trial testimony, if

5    requested; and that he will submit to a polygraph examination,

6    if requested by the United States Attorney's Office.

7           This -- the next paragraph, Paragraph 4, contains the

8    standard use immunity language typically found in our plea

9    agreements, and it pertains to the defendant's obligation to

10   cooperate, as set forth in Paragraph Number 3.

11          Paragraph 5 says that at final disposition, the

12   United States will advise the Court of the defendant's

13   forthrightness and truthfulness, or lack thereof.

14          Paragraph 6 says that there have been no

15   representations whatsoever by any agent or employee of the

16   United States, or any other law enforcement agency, or defense

17   counsel as to what the final disposition in this matter should

18   and will be.  The agreement includes nonbinding recommendations

19   by the United States; however, the defendant understands that

20   the Court is not bound by these recommendations, and that he

21   will not have the right to withdraw his plea if the Court

22   chooses not to follow them.

23          Paragraph 7 sets forth the nonbinding recommendations

24   that the United States is prepared to make in this case.  In

25   order to have been eligible for these recommendations, the

```
 1   defendant had to submit a signed, executed plea agreement by a
 2   certain date.  That date was orally extended by myself, Your
 3   Honor.  So Mr. Delligatti has taken the liberty of changing the
 4   date that appears in the original to May 24th, and that's fine.
 5   I'll initial that as well.
 6             THE COURT:  Did Mr. Delligatti and his client initial
 7   it?
 8             MR. PERRI:  Yes, they did.
 9             THE COURT:  Okay.  Thank you.
10             MR. PERRI:  So -- but, as I explained to Mr.
11   Delligatti, I typically say on the record that I consider the
12   plea agreement to have been submitted in a timely fashion --
13             THE COURT:  Okay.
14             MR. PERRI:  -- even if the original date hasn't been
15   changed.
16             THE COURT:  Okay.  Thank you.
17             MR. PERRI:  So the -- I would note for the record
18   that the Plea Agreement was signed and returned in a timely
19   fashion.
20             And Paragraph 8 indicates that if, in the opinion of
21   the United States, the defendant engages in obstructive
22   conduct, fails to cooperate, as promised, or fails to abide by
23   any other provision of this plea agreement, the United States
24   will not be bound to make the foregoing recommendations, and
25   the defendant will not have the right to withdraw his plea.
```

1          Paragraph 9 sets forth the stipulations of the

2    parties as to relevant conduct in this case.  The parties

3    understand that the Court is not bound by these stipulations,

4    and is not required to accept the same.  The defendant

5    understands and agrees that should the Court not accept the

6    stipulations, he will not have the right to withdraw his guilty

7    plea.

8          Paragraph 10 addresses the defendant's appellate and

9    post-conviction relief rights.  This paragraph contains the

10   standard appellate waiver typically found in our plea

11   agreements.  As to his 2255 habeas corpus rights, it is a

12   limited waiver.

13         Paragraph 11 indicates the United States' reservation

14   of the right to provide the Court and the probation office, in

15   connection with the presentence investigation, or in connection

16   with the sentencing hearing itself, any information, to respond

17   to any questions raised by the Court, correct any inaccuracies

18   or inadequacies in the anticipated presentence investigation

19   report, and respond to any written or oral statements made by

20   the Court, the defendant, or his counsel.

21         Paragraph 12 addresses the collection of any monetary

22   penalties that may be imposed by the Court.

23         Paragraph 13 indicates the defendant's understanding

24   that the guidelines are now advisory and no longer mandatory.

25         Paragraph 14 indicates the defendant's understanding

1    that he may be required to pay restitution to any or all of the

2    victims to counts of the Information, in an amount to be

3    determined at sentencing.

4           Paragraph 15 addresses the defendant's voluntary

5    forfeiture of the computer equipment that was involved in the

6    commission of the offense.

7           And Paragraph 16 says that if the defendant's plea is

8    not accepted by the Court, or if it's later set aside, or if he

9    breaches any part of the plea agreement, the United States

10   Attorney's Office will have the right to withdraw any

11   sentencing recommendations and/or void the agreement.

12          Paragraph 17 says that the defendant has been advised

13   and understands that he will be required to register as a sex

14   offender, pursuant to the Sex Offender Registration and

15   Notification Act.

16          Paragraph 18 says that the above 17 paragraphs

17   constitute the entire agreement between the defendant and the

18   United States of America in this matter.  There are no

19   agreements, understandings, or promises between the parties,

20   other than what's contained in this agreement.

21          Your Honor, I just signed the original plea

22   agreement, and I will tender it to the clerk.

23          THE COURT:  Okay.  Thank you.

24          Now, Mr. Perri, is what you just shared with the

25   Court, is that the entire agreement between the Government and

1    the defendant in this matter?

2             MR. PERRI:  It is, Your Honor.

3             THE COURT:  And, Mr. Delligatti, is the summary given

4    by Mr. Perri, is that a fair summary of the entire agreement?

5             MR. DELLIGATTI:  Yes, it is, Your Honor.

6             THE COURT:  Mr. Perri, were there any other written

7    offers made to Mr. Crawford in this matter?

8             MR. PERRI:  No, Your Honor.

9             THE COURT:  Okay.

10            Is that correct, Mr. Delligatti?

11            MR. DELLIGATTI:  Yes, Your Honor, that's correct.

12            THE COURT:  Okay.

13            Now, Mr. Crawford, I watched, and I noted that you

14   were following the plea agreement as Mr. Perri was going over

15   it.  But do you understand what this plea agreement does?

16            THE DEFENDANT:  Yes, sir.

17            THE COURT:  Do you understand what the plea agreement

18   requires of you?

19            THE DEFENDANT:  Yes, sir.

20            THE COURT:  Do you have any questions, Mr. Crawford,

21   at this time about the plea agreement?

22            THE DEFENDANT:  No, sir.

23            THE COURT:  And the reason I say, "at this time," Mr.

24   Crawford, is that I'm going to continue to go over some parts

25   of the plea agreement, and, certainly, if you have a question

1    about anything that I ask, you're welcome to ask that question

2    or talk with your lawyer before answering the question; do you

3    understand that?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Now, Mr. Crawford, I am a showing you the

6    original plea agreement.  The plea agreement has seven pages to

7    it.  And, Mr. Crawford, is that your signature --

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  -- at the bottom of each page of the plea

10   agreement?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  All seven pages?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  And, Mr. Crawford, did you read the

15   paragraphs on the page before you signed the bottom of the

16   page, and before you reached the agreement --

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  -- with the Government?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Mr. Crawford, do feel that you had

21   adequate time, all the time that you needed, to discuss this

22   plea agreement with your attorney, Mr. Delligatti?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  It's now been about a month since you've

25   signed it, have any questions come up in your mind between then

1    and now that haven't been answered about the plea agreement?

2            THE DEFENDANT:  No, sir.  If I had any questions, I

3    contacted my lawyer, and he explained them to me.

4            THE COURT:  Okay.  So -- and that would have been my

5    next question.  If you had questions, was your -- was your

6    lawyer able to answer those in a way that was satisfactory and

7    made sense to you?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  One other thing -- it has been noted on

10   the record, but I do just want to point out to you, on page 3

11   of the plea agreement, you'll see where the date for acceptance

12   -- this would be under Paragraph 7b, and that's on the top of

13   the page -- that the date of acceptance was corrected from May

14   17th to May 24th; is that correct?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  And did you initial that?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  You're agreeable to that?

19           THE DEFENDANT:  Yes, sir.

20           THE COURT:  Okay.  Now, Mr. Crawford, this plea

21   agreement contains certain recommendations and stipulations.

22   Do you understand that the Court, the sentencing Court, that

23   being Judge Kleeh, must defer his decision to accept or reject

24   the recommendations and stipulations in this plea agreement

25   till he's had an opportunity to consider a presentence

1    investigation report that will be prepared by probation in this

2    matter.  Do you understand that?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  Do you understand that the terms of a

5    plea agreement are merely recommendations to the Court, and

6    that the Court can reject the recommendations and stipulations,

7    and if it does so, you will not be allowed to withdraw your

8    plea of guilty?  Do you understand that?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  Now, do understand that under a concept

11   known as "relevant conduct," that the Court may take into

12   account any conduct, circumstances, and injuries relevant to

13   the crimes to which you plead guilty?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  Do you understand that under the terms of

16   this plea agreement, Mr. Crawford, that you and the Government

17   have stipulated and agreed that from on or about November of

18   2017, to in, or on or about July of 2018, that you, Mr.

19   Crawford, did knowingly use the Internet and a smartphone to

20   persuade, coerce, induce, and entice multiple teenage boys

21   under the age of 18 to engage in sexual activity, for which you

22   could be charged, and to produce and transmit child

23   pornography?  Do you understand that you've stipulated and

24   agreed to that?

25           THE DEFENDANT:  Yes, sir.

```
 1              THE COURT:  Do you understand that the Court is not
 2   bound by this stipulation, and the Court -- and if the Court
 3   does not accept the stipulation, you do not have the right to
 4   withdraw your guilty plea?  You understand that?
 5              THE DEFENDANT:  Yes, sir.
 6              THE COURT:  Now, does the written plea agreement
 7   represent the complete agreement between you and the
 8   Government?
 9              THE DEFENDANT:  Yes, sir.
10              THE COURT:  Mr. Crawford, is there anything that you
11   and the Government have agreed to that is not in the plea
12   agreement?
13              THE DEFENDANT:  No, sir.
14              THE COURT:  And, Mr. Crawford, do you want me to
15   accept the plea agreement?
16              THE DEFENDANT:  Yes, sir.
17              THE COURT:  Mr. Crawford, I find that you understand
18   and agree with the terms contained in the plea agreement, and I
19   order that the original be filed herein and made a part of the
20   record in this case.
21              Now, Mr. Crawford, again, you've been charged in
22   Counts 1 through 5, all with the same offense for different
23   dates and different individuals.  You've been charged with
24   enticement of a minor.  So, Mr. Crawford, how do you plead to
25   the charges contained in Counts 1 through 5 of the Information,
```

1   all of which are enticement of a minor, guilty or not guilty?

2          THE DEFENDANT:  Guilty.

3          THE COURT:  Now, Mr. Crawford, before I accept your

4   plea, I want to make sure that there is a factual basis for

5   your plea, that you understand the nature of the charge against

6   you, and the consequences of your pleading guilty to the

7   charge; that you understand the constitutional and other legal

8   rights that you will give up by pleading guilty, and that you

9   are pleading guilty voluntarily.

10          So, Mr. Crawford, you're charged in Counts 1 through

11   5 with enticement of a minor.  This is in violation of Title

12   18, U.S. Code, Section 2242(b), which provides, in pertinent

13   part, that whoever, using the mail, or any facility or means of

14   interstate or foreign commerce, knowingly persuades, induces,

15   entices, or coerces any individual who has not attained the age

16   of 18 years, to engage in prostitution, or any sexual activity

17   for which any person can been charged with a criminal offense,

18   or attempts to do so.  So do you understand this statute under

19   which you've been charged, Mr. Crawford?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  And, again, it's the same statute for

22   Counts 1, 2, 3, 4, and 5 of the Information.

23          So, Mr. Crawford, if the Government had to go to

24   trial in this case, the Government would have to prove the

25   following elements of Title 18 -- I might have said the number

1    incorrectly before -- it's Section 2422(b) -- against you

2    beyond a reasonable doubt.  And those elements are as follows:

3    That you used a facility or means of interstate commerce;

4    second, that you persuaded, induced, or enticed an individual

5    under the age of 18 to engage in any sexual activity for which

6    any person could be charged with a criminal offense.  And,

7    again, when they talk about "used a facility," that was the

8    smartphone, and the Internet.  And that you did this conduct

9    knowingly.

10          So do you understand the elements of the statute

11   under which you've been charged, Mr. Crawford?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Now, considering the statute and the

14   elements of the offense, do you consider yourself to be guilty

15   of enticement of a minor -- enticement of a minor, as alleged

16   in Counts 1, 2, 3, 4, and 5 of the Indictment?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  I'm sorry, the Information.

19          THE DEFENDANT:  Yes.  Yes, sir.

20          THE COURT:  Okay.

21          Now, Mr. Perri, do you intend to make a proffer, or

22   do you intend to call a witness to establish a factual basis?

23          MR. PERRI:  Your Honor, our case investigator,

24   Lieutenant Gary Weaver, is here, and I would like to put him on

25   to lay the factual basis.

1          THE COURT:  Okay.

2          Lieutenant, you may come forward, please.

3          And if the clerk would please swear in the

4    Lieutenant.

5               (LIEUTENANT GARY WEAVER WAS SWORN.)

6          THE COURT:  Mr. Weaver, or Mr. Perri, before you

7    start to ask questions, I just want to explain something to Mr.

8    Crawford.

9          Mr. Crawford, the Government is required to establish

10   a factual basis for what you're being charged with, and what

11   you're pleading guilty to.  Now, they're going to -- they're

12   going to do that through the testimony of this witness.  I want

13   you to listen to what he has to say, because when he's

14   finished, I will ask your attorney if he has any questions.  I

15   will ask you if you have any questions.

16         In addition, I will ask you that -- I'll ask you is

17   what Mr. -- what the Lieutenant testified, I'll ask you if it's

18   substantially correct, and I will also ask you is what the

19   Lieutenant testified, does it accurately reflect your

20   involvement in what occurred; does that make sense to you?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  In addition -- so I want you to listen to

23   in that way -- in addition, I will ask you to tell me, in your

24   own words, what makes you guilty of committing the offense of

25   enticement of a minor, as set forth in these counts.

1          So with that, -- so do you have any questions about

2   that process?

3          THE DEFENDANT:  No, sir.

4          THE COURT:  Okay.

5          Mr. Perri, you may continue.

6          MR. PERRI:  Thank you, Your Honor.

7                        DIRECT EXAMINATION

8   BY MR. PERRI:

9   Q.   Sir, would you please state your name for the record?

10  A.   Lieutenant Gary Weaver.

11  Q.   Where do you work?

12  A.   The Bridgeport Police Department.

13  Q.   And are you assigned to any particular special units, or

14  do you have any special designations?

15  A.   Yes, I work for the -- I'm deputized with the FBI's Crimes

16  Against Children Task Force in the Northern District, and also

17  with the West Virginia State Police Internet Crimes Against

18  Children Task Force.

19  Q.   And how long have you been working child exploitation

20  cases?

21  A.   Since 2010, so a little over nine years.

22  Q.   Okay.  And you also conduct online investigations as well?

23  A.   Yes, sir.

24  Q.   All right.  And through your employment, did you have the

25  opportunity to investigate the alleged illegal conduct of the

1  defendant, Quionte Crawford?

2  A.   Yes, sir, I did.

3  Q.   Were you, in fact, the case investigator for this matter?

4  A.   Yes, sir.

5  Q.   All right.  Could you please tell us how the defendant's

6  conduct came to the attention of law enforcement.  And then I

7  would like you to explain the nature of the conduct, as it

8  pertains to the different victims and the different counts.

9  A.   Yes, sir.  In June of 2018, a report was taken from, well,

10 John Doe Number 1, which was a 14-year-old male, concerning

11 Quionte Crawford.  John Doe Number 1 advised that he was

12 familiar with the defendant from sports activity, and that the

13 defendant had been messaging him over a social media app called

14 Snapchat.  That's an application that's used on smartphones and

15 social media platforms through the Internet.

16         During the messages, Q. sent pictures -- Q., which is

17 -- Quionte is -- all the victims knew him as Q., and that's

18 what they referred to him as -- sent pictures of his erect

19 penis, and requested for John Doe Number 1 to send pictures of

20 his penis, and masturbation videos of himself to the defendant.

21 Number 1 -- John Doe Number 1 did send the images via Snapchat

22 to the defendant.  The defendant did know that John Doe

23 Number 1 was under the age of 18.  These facts were confirmed

24 through an interview with the John Doe Number 1, who, like I

25 said at the time, was age 14.  John Doe Number 1 told me that

 1    the defendant stated if he did not send pictures -- if John Doe

 2    Number 1 did not send pictures to the defendant, that the

 3    defendant would tell John Doe Number 1's parents that he was

 4    doing things, and try to get him in trouble.

 5            Then I did an interview with the defendant, Mr.

 6    Crawford.  He admitted that he knew John Doe Number 1 and -- he

 7    was under the age of 18, and that he had sent naked pictures to

 8    John Doe Number 1.

 9            A search warrant was also served on the defendant at

10    the same time for a cell phone and for the data contained on

11    the phone.  A forensic exam was conducted on the phone, and

12    data was reviewed.  Upon review of the data, several

13    conversations on the social media app called Kik, which, again

14    is an application that's used on cell phones and works through

15    the Internet; they're based out of Canada.  Found -- also found

16    were several images on the phone of male subjects in photos and

17    videos of the subjects showing their penises and/or

18    masturbating.  Some of the photos were then matched up with the

19    conversations that were found on the social media app, Kik.

20    The conversations showed the user on Mr. Crawford's phone was

21    using the screen name of Kayla Stevens, which the screen name

22    was also Stevenson3442; that was on Kik.  And that Kayla

23    Stevens had been conversing with the victims.

24            One of the conversations from Kayla Stevens was to

25    John Doe Number 2.  During the conversations, John Doe Number 2

1    stated that he was 16.  During the conversations, Kayla

2    requested photos of John Doe Number 2 showing his penis and

3    masturbating.

4         An interview then was set up with the John Doe Number

5    2, and he admitted that he knew Mr. Crawford, knew him as Q.

6    He knew him through baseball, and through his family, and that

7    he did converse with Kayla on the Kik app, and sent videos of

8    himself masturbating, and of his erect penis, to Kayla.  This

9    occured while John Doe Number 2 was 15 years of age.

10        The images that were found on Mr. Crawford's phone in

11   relation to John Doe Number 2 were then shown to John Doe

12   Number 2, and he was able to identify that those photos were of

13   himself, and that they were the ones that were sent to the --

14   Kayla Stevens.

15        Another conversation was with John Doe Number 3, was

16   found on the Kik application.  The conversations were between

17   John Doe Number 3, and, again, through Kayla Stevens.  During

18   the conversations, Kayla requested naked pictures of John Doe

19   Number 3, and were sent -- Kayla was sent photos of John Doe

20   Number 3's penis.

21        An interview was conducted with John Doe Number 3,

22   and he admitted that he knew Mr. Crawford, and that Mr.

23   Crawford had stated he knew Kayla Stevens and would put her in

24   contact with him, and that's how Kayla Stevens became in

25   contact with John Doe Number 3.  It was later found out that,

1  again, Kayla was actually -- was Mr. Crawford.

2          Shortly after this, the conversations started between

3  Kayla and John Doe Number 3.  John Doe Number 3 stated that Mr.

4  Crawford knew that he was under the age of 18, and that John

5  Doe Number 3 was able to identify the photos and the images

6  that were found during the conversations as himself, and that

7  they were the naked photos.

8          Another conversation was found on the phone with John

9  Doe Number 4.  The conversations were between John Doe Number 4

10  and Kayla Stevens, again on the social media app, Kik.  During

11  the conversations, Kayla requested naked pictures and videos of

12  John Doe Number 4 -- Number 4's penis, and masturbating.

13          An interview was then conducted with John Doe

14  Number 4, and he admitted that he had conversations with Kayla

15  Stevens, and that she had requested photos and videos of his

16  penis and masturbating, and that John Doe Number 4 did send

17  such images to Kayla.  John Doe Number 4 identified the images

18  found on the phone as himself, and that they were the ones that

19  had been sent to Kayla.  John Doe Number 4 stated that he sent

20  the images because Kayla stated that she would meet and have

21  sex with him if he sent images, but they never did -- never did

22  meet.  Also, in this conversation, Kayla would tell him that if

23  you don't send the pictures, we're not going to meet, and all

24  this.  The subject, at that time, was the age of 15 when all

25  this occurred.

1          John Doe Number 4 was asked if he knew the defendant,

2    and he stated that yes, he was a friend of his family, and the

3    defendant did know he was under the age of 18.  Again, John Doe

4    Number 4 stated he was 15 at the time of the conversations.

5          Another conversation was found on the phone was with

6    John Doe Number 5.  These conversations, again, were on the

7    social media application of Kik.  The conversations were

8    between John Doe Number 5 and Kayla Stevens.  The conversations

9    appeared that John Doe Number 5 knew Kayla was the defendant,

10   Mr. Crawford, as he made references during some of the

11   conversations, hey, big guy, and things like that.  During the

12   conversations, the defendant requested naked pictures of John

13   Doe Number 5's penis.

14         An interview was conducted with John Doe Number 5,

15   and he stated that yes, he did have conversations with the

16   defendant, and he knew the defendant was using the Kik screen

17   name of Kayla Stevens.  He stated that Kayla had requested John

18   Doe Number 5 to send naked pictures to him.  John Doe Number 5

19   observed the images found on the cell phone, and identified the

20   naked images as himself, and they were the ones the defendant

21   had requested.  John Doe Number 5 stated that he knew the

22   defendant, and that the defendant knew that he was under the

23   age of 18, and that the encounters first started with the

24   defendant when he was roughly around the age of 15.  The

25   conversations found on the Kik application occurred between the

1   fall of 2017, and the late spring, early summer of 2018.

2          All victims stated that they knew the defendant

3   socially, and that the defendant knew that they were under the

4   age of 18 during the stated incidents.  All the incidents

5   occurred over the social media applications of Snapchat and

6   Kik, and these were done over the defendant's smartphone, and

7   the Internet.

8          The defendant used different methods of obtaining

9   these pictures from the victims.  Victims number 2, 3, and 4,

10  the defendant would request naked pictures of minors, as a

11  female -- acting as a female in exchange for sexual favors, and

12  the real-world meetings, or naked pictures, which is a common

13  method, and it's part of a common practice we know as grooming.

14         Victims Number 1 and 5, the defendant would use

15  threats of telling others, or telling parents, and stuff, of

16  what was going on, and things like that, that would get them in

17  trouble, to be able to obtain the pictures from them.

18  Q.   Okay.  So to be clear, the -- this defendant knew all five

19  of the victims personally?

20  A.   Yes, sir.

21  Q.   He knew them in the real world because of sporting

22  activities, and things like that?

23  A.   Yes, sir.

24  Q.   Okay.  So he actually knew what their actual ages were?

25  A.   Yes, sir.

1  Q.   And, in fact, not only were they under 18, but they were

2  all under 16 at the time; is that correct?

3  A.   Yes, sir.

4  Q.   Okay.  And --

5  A.   Well, I believe one started when he was there, and it went

6  up to, maybe, the age of 17, but --

7  Q.   Okay.

8  A.   -- yes, in that timeframe.

9  Q.   But the conduct did take place when the boys were

10  respectively -- and I'm going by the John Doe numbers here, 14,

11  15, 15, 15, and 15?

12  A.   Yes, sir.

13  Q.   Okay.  So, -- and with respect to John Doe Number 3, he

14  also used the text function on his phone to request images from

15  that particular victim; is that correct?

16  A.   Number 3?  Yes, sir, I believe so.  Yes.

17  Q.   Okay.  And as a part of the inducement, or grooming

18  process, I should characterize it, the defendant would also

19  send pictures of his own genitalia to the -- or masturbation

20  videos to the victims, as a way of getting them to reciprocate;

21  is that correct?

22  A.   Correct.

23  Q.   All right.  And as far as the persona of Kayla Stevens, is

24  it also correct that if the victims did not comply and send him

25  what he was asking for, that would have consequences for plans

1   for meetings and for the progression of the relationship; is

2   that right?

3   A.   Yes.

4   Q.   And was that a form of psychological manipulation?

5   A.   Yes, sir.

6   Q.   Okay.  And his -- what was his intention?  Once the

7   victims made these penis pictures, meaning pictures of their

8   erect penises, or took masturbation videos that they produced

9   themselves, what was the defendant's intention of what was

10  going to be done with those pictures and videos once they were

11  made?

12  A.   Once those were on there, he would state that if you send

13  me some, I'll send you some; that we could meet up.  If you

14  send me these pictures or these videos and stuff, then we can

15  meet up, have a sexual encounter of, you know, different kinds.

16  Things like that, for the subjects that knew him as Kayla

17  Stevens.  But those never came to fruition.

18  Q.   Okay.  And, but he clearly contemplated that they would be

19  sent to him via and through the Internet, right?

20  A.   Yes.

21  Q.   And you can do that with Kik and Snapchat, right?

22  A.   Correct.

23  Q.   In fact, when you got the forensic -- when you

24  forensically analyzed the phone, you were able to get chat

25  transcripts that show where pictures are being attached, and

1   videos are being attached, and how it fits into the

2   conversation.  You know, you see language requesting something,

3   and then language associated with something being sent, right?

4   A.   Yes.

5   Q.   So you can actually see the attachment?

6   A.   Yeah.  Yeah.  They were -- they were numbered.  It would

7   show attachment and this conversation, attachment number

8   so-and-so.  And then you could go into the gallery section of

9   the forensics and match up with that number, too.  That that

10   was the photo that was in the conversation.  Then once we did

11   that, then we verified those photos with each victim.  Were

12   those the photos in the conversation, and were those photos of

13   you?

14   Q.   Okay.  So, in each respect, the facility of interstate

15   commerce is the Internet, and the defendant's smartphone, --

16   A.   Correct.

17   Q.   -- and he's using his smartphone to access the Internet,

18   correct?

19   A.   Correct.

20   Q.   All right.  And to be -- to be clear, there were

21   techniques used for persuasion, inducement, enticement, and

22   coercion with respect to these victims?

23   A.   Yes, sir.

24   Q.   And what is your understanding as to where the defendant

25   was located while he was engaging in these chat conversations

1  with the victims?

2  A.   They were in the Northern District.

3  Q.   Okay.

4  A.   Of West Virginia.

5  Q.   His residence, in particular, was where?

6  A.   It was in Marion County.

7  Q.   Okay.

8  A.   I forget the exact address.

9  Q.   So it's your understanding that he's using his phone at

10 that address, primarily, while he's conversing with these kids?

11 A.   There, and the victims were all in this area, too.

12 Q.   Okay.  All right.  And, so, essentially, he was

13 persuading, inducing, enticing, and coercing these individuals

14 to create and produce these images and videos, which would

15 constitute the offense of sexual exploitation of children, as

16 prescribed by Title 18, United States Code, Section 2251(a),

17 what we commonly refer to as production of child pornography?

18 A.   Yes, sir.

19        MR. PERRI:  No further questions, Your Honor.

20        THE COURT:  Okay.  Thank you, Mr. Perri.

21        Mr. Delligatti, do you have any questions for this

22 witness?

23        MR. DELLIGATTI:  No, Your Honor.

24        THE COURT:  And, Mr. Crawford, do you have any

25 questions for this witness?

 1              THE DEFENDANT:  No, sir.

 2              THE COURT:  And, Mr. Crawford, is the evidence that

 3   the Government attorney just presented, through its witness,

 4   the witness's testimony, is that evidence substantially

 5   correct?

 6              THE DEFENDANT:  Yes, sir.

 7              THE COURT:  And, Mr. Crawford, did the testimony of

 8   the Government's witness accurately reflect your involvement in

 9   what occurred?

10              THE DEFENDANT:  Yes, sir.

11              THE COURT:  And, Mr. Crawford, would you explain to

12   me what you did, in your own words, that makes you guilty of

13   enticement of a minor, in violation of Title 18, U.S. Code,

14   2422(b), as set forth in the Information.  If you'd just wait

15   one second.

16              You may go ahead and have a seat, Lieutenant.

17              THE WITNESS:  Thank you, Your Honor.

18              THE COURT:  Okay.  I'm sorry to interrupt, Mr.

19   Crawford.  You may go ahead and tell me, in your own words.

20              THE DEFENDANT:  I was sending and receiving pictures

21   of minors.

22              THE COURT:  Did you -- and, as you know, it was

23   detailed in the Government's testimony, you have the

24   Information in front of you, this indicates that you sent -- in

25   Count 1, you -- this is John Doe-1 -- why don't you look at the

1    Information with me.  But Count 1, John Doe-1, a 14-year-old

2    boy, and this is about May of 2018.  So, first of all, did you

3    know -- John Doe-1, did you know who that person was?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Did you know that, at the time, that he

6    was 14 years old?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Okay.  And did -- you asked him to send,

9    via the phone -- was it Snapchat?

10             THE WITNESS:  Yes, on Number 1; yes, sir.

11             THE COURT:  Okay.

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  But through these means, to send,

14   basically, photographs of himself, as described by the officer

15   in his testimony; did you ask him to do that?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Did you also exchange pictures of

18   yourself, as described?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  And is this the boy you knew?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  And this one where -- did you tell him

23   that if he didn't do so, that you would report him to somebody?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  His parent, or something like that?

1             THE DEFENDANT:  Yes, sir.

2             THE COURT:  Okay.  That happened in Marion County, in

3    the Northern District of West Virginia?

4             THE DEFENDANT:  Yes, sir.

5             THE COURT:  I mean, these -- what you exchanged, and

6    what the -- the -- the boys exchanged to you, that was -- they

7    were sexually explicit photographs?

8             THE DEFENDANT:  Yes, sir.

9             THE COURT:  Now, in regard to Count 2, that indicates

10   that this happened on or about November 17th, this John Doe-2,

11   is that someone that you knew?

12            THE DEFENDANT:  Yes, sir.

13            THE COURT:  And did you know that he was 15 years

14   old?

15            THE DEFENDANT:  Yes, sir.

16            THE COURT:  And in that exchange, it was a similar

17   exchange; you would send naked photographs of yourself; the

18   young man would -- the young boy would send them to you; is

19   that correct?

20            THE DEFENDANT:  Yes, sir.

21            THE COURT:  What did you tell the boy if he didn't

22   exchange these photographs would happen?

23            THE DEFENDANT:  That I would get him in trouble.

24            THE COURT:  Okay.  Count 3 -- and that happened in

25   Marion County?

1            THE DEFENDANT:  Yes, sir.

2            THE COURT:  In the Northern District?

3            Count 3, November, or December 2017, on or about

4   January 2018, identifies John Doe-3 as a 15-year-old boy.  Do

5   you know who that boy is?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  And did you know him to be 15 years old?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  Did you, again, exchange sexually

10  explicit photographs with him?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  He would send photographs of himself to

13  you; you would send them to him?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  And I know the officer -- the lieutenant

16  described this differently, in this one, did you threaten to

17  tell parents, or is this one where you suggested you were --

18  you would meet up with him and have sexual activity?

19           THE DEFENDANT:  Meet up, or something.  Yes, sir.

20           THE COURT:  So -- and this meeting was to engage in

21  sexual activity?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  Okay.  And you knew that's something,

24  probably, the young boys would be interested in?

25           THE DEFENDANT:  Yes, sir.

1          THE COURT:  Now, Count 4 indicates that March 18th,

2    I'm sorry, March 2018 to April 2018, Marion County, Northern

3    District of West Virginia, identifies John Doe-4, a 15-year-old

4    boy.  Did you know this boy?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Did you know him to be 15?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  How -- how did you know these boys from

9    baseball; were you a coach, or did --

10          THE DEFENDANT:  No.

11          THE COURT:  -- you just knew them from the

12    neighborhood?

13          THE DEFENDANT:  Just know people.  Just know a lot of

14    people.

15          THE COURT:  Okay.  And, so, with this boy, did you

16    ask him to send you photographs?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Sexually explicit ones of himself?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  And did you send photographs of yourself

21    to him?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  They were sexually explicit?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  And in this one, was it told to him that

1  you would -- the two of you would meet up or, was this the one

2  where you, perhaps, said you'd tell his parents?

3            THE DEFENDANT:  Meet up.

4            THE COURT:  Meet up.  Okay.  And meeting up, I mean

5  you clearly understood that, and you knew that they understood

6  that, for purposes of sexual activity?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  Count 5.

9            MR. PERRI:  Your Honor, can I interrupt for just one

10  second --

11            THE COURT:  Yes.

12            MR. PERRI:  -- on Count 5.  I want to thank Mr.

13  Delligatti for being attentive and conscientious, because he

14  noticed something that had not caught my eye.  The date for

15  Count 5 says December 2018.  It should be December 2017.  As

16  the Court knows now, that would be consistent with the

17  lieutenant's testimony --

18            THE COURT:  Okay.

19            MR. PERRI:  -- and with the other counts.  It should

20  be 2017.

21            THE COURT:  Okay.

22            So, Mr. --

23            Well, let me ask you, the lieutenant.  You have Count

24  5, is that correct that the -- that the activity described in

25  Count 5 took place in December 2017?

1              THE WITNESS:  Yes, Your Honor.

2              THE COURT:  Okay.

3              And are you moving that the Information be corrected

4    to reflect that, Mr. Perri?

5              MR. PERRI:  Yes, Your Honor.

6              THE COURT:  Any objection, Mr. Delligatti?

7              MR. DELLIGATTI:  No objection, Your Honor.

8              THE COURT:  Okay.

9              So, Mr. Crawford, we're looking at Count 5 now.  It

10   indicates that this activity took place in December 2017,

11   Marion County, Northern District.  It identifies John Doe-5 as

12   a 15-year-old boy.  Did you know that boy to be 15 years old?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  And did you ask him to send you sexually

15   explicit photographs of himself?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  And videos?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  And did you send sexually explicit

20   photographs of yourself and videos to him?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Did you also say that if he would do so,

23   you all would meet up?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  And is that -- was understood to engage

1    in sexual activity; is that correct?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Okay.  All of these events occurred in

4    Marion County, Northern District of West Virginia; is that

5    correct?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Now, is there anything else you wanted to

8    add about that, Mr. Crawford?

9              THE DEFENDANT:  No, sir.

10             MR. PERRI:  Your Honor, will the Court make that

11   correction?

12             THE COURT:  I don't...

13             MR. PERRI:  I am just wondering --

14             THE COURT:  Do I have -- have -- the Information,

15   have you filed it?  I assume it's been filed, hasn't it, the

16   Information?

17             THE CLERK:  (Inaudible.)

18             THE COURT:  Okay.  I think -- unless the clerk tells

19   me otherwise, I think you can make the motion on the record

20   that Count 5 of the Indictment be corrected to reflect that it

21   is in or about December 2017, not 2018.  So corrected to 2017.

22   I think the clerk can note, in the minute entry, that you made

23   that motion to correct.

24             MR. PERRI:  Thank you, Your Honor.

25             THE COURT:  Mr. Delligatti, there's no objection; is

 1    that correct?

 2             MR. DELLIGATTI:  No objection; I believe it's proper.

 3             THE COURT:  Okay.  And the Court will -- the Court

 4    will grant the motion.

 5             That should be sufficient.

 6             THE CLERK:  (Inaudible.)

 7             THE COURT:  Okay.  I think we'll do it -- it's an

 8    oral motion on the record.  No objection; it's been granted.

 9             MR. PERRI:  Thank you, Your Honor.

10             THE COURT:  And I think that should be satisfied.

11             Okay.  Mr. Delligatti, are you satisfied if this case

12    went to trial there would be no meritorious legal defense to

13    the charges?

14             MR. DELLIGATTI:  I am, Your Honor.

15             THE COURT:  Are you satisfied Mr. Crawford's

16    constitutional and other rights have been observed fully?

17             MR. DELLIGATTI:  I am, Your Honor.

18             THE DEFENDANT:  Yes.

19             MR. DELLIGATTI:  Oh, he was --

20             THE COURT:  Oh, no.  That's okay.  Yeah, I was --

21             THE DEFENDANT:  I thought you said, "Mr. Crawford."

22    Sorry.

23             THE COURT:  Well, I -- you were listening well, but I

24    was asking Mr. Delligatti --

25             THE DEFENDANT:  Okay.

1          THE COURT:  -- if, in his opinion, that he felt that

2     your -- your rights --

3          THE DEFENDANT:  I apologize.

4          THE COURT:  -- had -- oh, no.  You -- it's good to

5     speak up.

6          So, Mr. Delligatti, are you satisfied that Mr.

7     Crawford's constitutional and other rights have been observed

8     fully?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  And, Mr. Delligatti, do you concur in Mr.

11     Crawford's now-stated intention to enter a plea of guilty?

12          MR. DELLIGATTI:  I do, Your Honor.

13          THE COURT:  Mr. Crawford, I find that there is a

14     sufficient factual basis for your plea of guilty.

15          Now, Mr. Crawford, do you understand that you are

16     pleading guilty to a felony offense, and that if your plea is

17     accepted, you will be adjudged guilty of that felony offense --

18     of that felony offense?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  And, in this case, you are pleading

21     guilty to five separate felony offenses; do you understand

22     that?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Now, do you understand that such judgment

25     may deprive you of valuable civil rights, such as your right to

1    vote; your right to hold public office; your right to serve on

2    a jury; and your right to possess a firearm or a gun of any

3    kind?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Now, I want to go over the statutory

6    penalties with you -- that you'll face, Mr. Crawford.  Do you

7    understand that for each offense, that you expose yourself to a

8    maximum penalty of imprisonment of not less than 10 years?

9    Again, that's referred to as a mandatory minimum; that you

10   would spend at least 10 years incarcerated, and could be up to

11   life.  Do you understand that?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  A fine up to $250,000, and a term of

14   supervised release of 5 years, or a lifetime; do you understand

15   that?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Do you understand, also, that part of the

18   sentence that can and would be imposed by the Court is -- this

19   is considered a sex offender offense, so you would be required

20   to register as a sex offender?  The Court could require that

21   that be no less than five years, up to a lifetime of

22   registration; do you understand that?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  I think I asked you this, but the

25   mandatory minimum of this instance for Counts 1 through 5 is

1   not less than 10 years; do you understand that?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Now, do you also understand that

4   supervised release means that after you are released from

5   incarceration that you will be supervised by the probation

6   office, under conditions that will be set by the Court?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  There's also separate supervision for

9   someone who's on -- who's required to register as a sex

10  offender by the state also.

11         Now, do you understand that if you violate the terms

12  of supervised release, the Court can revoke the term of

13  supervised release and order you to serve a term in prison?  Do

14  you understand that?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Do you understand if you also violate the

17  requirements of registration for sex offender, such as where

18  you live, where you work, your phone number, what electronic

19  devices you have, that if you violate any of that, those could

20  be felonies, and you could be charged?  Do you --

21         THE DEFENDANT:  Yes.

22         THE COURT:  -- understand that?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Now, do you understand you'll be required

25  to pay a special assessment of $100 for having been convicted

1   of a felony offense?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Because there are five counts, that would

4   be a total of $500; do you understand that?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Now, Mr. Crawford, do you understand that

7   you've agreed, as part of your plea, to pay this assessment

8   within 40 days of entry of your plea?  Do you understand that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Now, Mr. Crawford, as part of your fine,

11   you could be required to pay the cost of incarceration, and/or

12   the cost of supervision on release; do you understand that?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Mr. Crawford, it now costs $2,552 per

15   month for prison; $326 per month for supervised release; $2,417

16   per month for a residential reentry center; do you understand

17   that?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Now, do you understand that upon release

20   from imprisonment, we discussed that you will be required to

21   register as a sex offender and keep that registration current?

22   Do you understand that?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Do you understand that the forfeiture of

25   certain assets is part of the sentence that may be imposed in

1   this case?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  What forfeiture means is that the

4   Government had taken certain things from you; they intend to

5   keep it.  And in this agreement, they have taken from you an

6   iPhone, Model 10, and the Government will not return it to you

7   and they'll keep it as your own property; do you understand

8   that?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Or their property.  Do you understand

11  that if you were not a citizen of the United States, that by

12  pleading guilty to a felony charge, you may be subject to

13  deportation at the conclusion of any sentence; that you may be

14  denied future entry into the United States; that you may be

15  denied citizenship if you ever applied for it?  Do you

16  understand that?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  Now, Mr. Crawford, this is in your plea

19  agreement, but do understand that the U.S. Sentencing

20  Guidelines play an important role in determining a sentence in

21  your case?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  And have you and Mr. Delligatti discussed

24  the application of the Guidelines?

25             THE DEFENDANT:  Yes, we have.

 1          THE COURT:  Now, I want to show you, and I know Mr.

 2   Delligatti has the book in front of you, and he will show you

 3   in the back, the cover on the inside, it has what's called a

 4   Sentencing Table; do see that?

 5          THE DEFENDANT:  Yes, sir.

 6          THE COURT:  The top left-hand corner has the Offense

 7   Level I is the lowest, and they go up.  The higher the offense

 8   level, Mr. Crawford, the greater number of months you're

 9   exposed to in sentencing; do you understand that?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  There's also a place for criminal

12   history.  And, so, if you look at that, it will say, "Criminal

13   History Category" on the top, left to right.  It's I through V.

14   I is the lowest; V is the highest.  The higher your criminal

15   history, the greater number of months you're exposed to in

16   sentencing; --

17          THE DEFENDANT:  Yes.

18          THE COURT:  -- do you understand that?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Now, what will happen, Mr. Crawford --

21   and I want to share a few more things with you about how this

22   works -- is that the Court will not be able to determine the

23   applicable advisory guideline sentence for your case until

24   after it receives the presentence investigation report, and you

25   and the Government have had the opportunity to review it, and

1    to challenge the facts determined by the probation officer, and

2    the application of the guidelines recommended by the probation

3    officer; do you understand that?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  So they'll come back in the report and

6    say that we believe the -- or based upon the offenses and a

7    number of factors, that your offense level is offense level,

8    say, 33.  So if you go look at level 33, if you go to the right

9    of it, you'll see where that says 135 to 168.  Do you

10   understand that's the number of months of incarceration?  Do

11   you understand that?

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  You also understand, though, that the

14   Court is bound -- unless there's some exception, the Court is

15   bound by the statute enacted by Congress, which, then created a

16   mandatory minimum of 10 years; do you understand that?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  Now, do you understand that the sentence

19   imposed by the Court may be different from any estimate Mr.

20   Delligatti may have given to you, or what you thought it would

21   be?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  And do you also understand the Court must

24   calculate the applicable advisory sentence guidelines, consider

25   that range, and consider possible departures under the

1    sentencing guidelines, and other factors?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  Do you understand the Court is not bound

4    by the advisory guideline range, and it does have the authority

5    to impose a sentence that is more severe or less severe than

6    the sentence called for by the Guidelines?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  And do you understand that parole has

9    been abolished in the federal system, and you will not be

10   released on parole if you are sentenced to prison?  Do you

11   understand that?

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  Parole is a state court concept, Mr.

14   Crawford.  So sometimes you'll hear in state court someone is

15   sentenced to one to five years.  If they serve one year, they

16   then become eligible for parole, or, sometimes on parole, if

17   you serve half your sentence, you're eligible for parole, which

18   means you're released from prison, but supervised under parole.

19   In the federal system, there is no parole.  If the Court

20   sentences you to 15 years, you serve 15 years; you don't get

21   out after 7; do you --

22           THE DEFENDANT:  Yes.

23           THE COURT:  -- understand that?  And the only way

24   that time served can be reduced is for goodtime credit, and

25   goodtime credit is controlled by the warden and the staff in

1    the prison; do you understand that?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  The Court has no say on it whatsoever.

4              Now, do you understand that even if you do not like

5    the sentence imposed by the Court, you will still be bound by

6    your plea, and you will have no right to withdraw it?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Do you also understand you have a right

9    to testify at your sentencing hearing, if you so desire?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  Now, Mr. Crawford, do you understand that

12   in your plea agreement, you've agreed to give up your right to

13   appeal your sentence, under many circumstances?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Now, Mr. Crawford, everyone found guilty

16   of a crime in federal court in this District has a right to

17   appeal the conviction and sentence to the Fourth Circuit Court

18   of Appeals in Richmond, Virginia.  A three-judge panel will

19   then review the conviction and the sentence to see if it was

20   done correctly.  So do you understand that right of appeal?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Do you also understand, now, under the

23   terms of Paragraph 10 of your plea agreement, that you are

24   giving up, or waiving, your right to appeal whatever sentence

25   is imposed for any reason?  You also waive your right to appeal

1    the conviction on any ground whatsoever, and on any other

2    statute or constitutional provision.  Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  So do you understand that you would only

5    have the right to appeal your guilty plea if you believe it was

6    unlawful or involuntary, or there was some other fundamental

7    defect in the proceedings?  Do you understand that?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Now, as you sit here now, Mr. Crawford,

10   do you consider your plea -- guilty plea to be lawful?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Do you consider it to be voluntary?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Do you know of any fundamental defects in

15   these proceedings, so far?

16             THE DEFENDANT:  No, sir.

17             THE COURT:  Now, do you also understand everyone has

18   the right to challenge the conviction, or the sentence, or the

19   manner in which it was determined in a post-conviction

20   proceeding, sometimes called a habeas corpus petition or

21   collateral attack, under Title 28, U.S. Code, 2255?  Do

22   understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Do you understand that under the terms of

25   Paragraph 10 of your plea agreement, that you have waived your

1    right, or given up your right, to challenge the conviction,

2    which is within the maximum provided in the statute, or the

3    sentence, or the manner in which it was determined in any

4    post-conviction proceeding, including a habeas corpus petition,

5    or a collateral attack?  And those are simply other legal means

6    you're given to challenge your sentence, or the conviction; do

7    you understand that?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Now, do you understand, then, that your

10   only legal remedies on appeal or collateral attack are for

11   claims of ineffective assistance of counsel, which has to do

12   with the conduct of your own lawyer?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Or prosecutorial misconduct, which would

15   have to do with the conduct of the U.S. Attorney's Office; do

16   you understand that?

17             THE DEFENDANT:  Yes.

18             THE COURT:  As you sit here today, Mr. Crawford, do

19   you know of any evidence that would suggest, in any way, that

20   Mr. Delligatti has been ineffective in representing you?

21             THE DEFENDANT:  No, sir.

22             THE COURT:  And, Mr. Crawford, as you sit here today,

23   do you know of any evidence that would suggest in any way that

24   Mr. Perri, or anyone else in the U.S. Attorney's Office, do you

25   know of any evidence to suggest that they have been guilty of

1   prosecutorial misconduct?

2          THE DEFENDANT:  No.  No, sir.

3          THE COURT:  Now, have you discussed the waiver of

4   these important appellate rights with your lawyer?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Having done so, do you still wish to

7   waive those rights?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Mr. Delligatti, do you believe Mr.

10  Crawford fully understands the importance of the rights he's

11  waiving?

12         MR. DELLIGATTI:  Yes, I do, Your Honor.

13         THE COURT:  Now, Mr. Crawford, do you understand,

14  with few exceptions, any notice of appeal must be filed within

15  14 days of judgment being entered in your case?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  Mr. Crawford, I find that you understand

18  the nature of the charge, consequences of a guilty plea, and

19  the important appellate rights that you're waiving.

20         Now, Mr. Crawford, I want to go over some

21  constitutional rights with you.  Do understand that you do have

22  the right to continue to plead not guilty to the charge?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Do you understand that by pleading

25  guilty, you give up your right to a speedy and public trial by

1    jury?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  Do you understand that by pleading

4    guilty, you give up your right to force the Government to come

5    forward with witnesses and evidence against you?  Do you

6    understand that?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  Do you understand that you would have

9    been presumed innocent until the Government presented enough

10   evidence to convince a judge and the jury of your guilt beyond

11   a reasonable doubt?  Do you understand that?

12           THE DEFENDANT:  Yes.

13           THE COURT:  Do you understand that when you admit

14   your guilt, such as you've done here today, that you relieve

15   the Government of the burden of proving your guilt?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  Now, do you understand that you have the

18   right to the assistance of counsel at trial?  Do you understand

19   that?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  Do you understand that if you could not

22   afford an attorney, that the Court would appoint an attorney to

23   represent you, and has appointed to -- attorney to represent

24   you?  Do you understand that?

25           THE DEFENDANT:  Yes, sir.

1          THE COURT:  Do you also understand that by pleading

2     guilty, you give up that right?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Do you understand that -- I think I might

5     have missed a question.  So do you understand that you and your

6     attorney who represents you, Mr. Delligatti, would have the

7     right to confront and cross-examine your accusers and witnesses

8     who are called by the Government, to test the truth of what

9     they said?

10          THE DEFENDANT:  Yes.

11          THE COURT:  So, do you understand when you plead

12     guilty, you give up the right to do that?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Do you understand that had you desired to

15     go to trial and call witnesses, that you would have been

16     entitled to the services of the U.S. Marshal to bring witnesses

17     to court under proceeding?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Do you understand that?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Do you understand that by pleading

22     guilty, you give up the right to call witnesses, except at your

23     sentencing?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Do you understand that you would have had

1   the right to move to suppress, or keep away from the jury's

2   hearing and consideration, any evidence, of any nature, that

3   had been illegally or unlawfully obtained?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  Now, do you understand that had you

6   desired to go to trial, that you would have had the right to

7   testify at trial?

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  However, do you understand that you

10  cannot be compelled or forced to testify?  Do you understand

11  that?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Do you understand that you have a

14  constitutional right to go to trial and remain silent?  Do you

15  understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  That means not to take the witness stand,

18  not to call any witnesses, or not to present any evidence

19  whatsoever on your own behalf; do you understand that?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  And do you understand that the Court

22  would have instructed and told the jury that they could not

23  convict you because of the exercise of your constitutional

24  right to remain silent?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  But only based upon an offer of proof of

2     your guilt from the Government; do you understand that?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Do you understand that you give up the

5     right to a unanimous verdict from a jury when you plead guilty?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Now, Mr. Delligatti, do you believe that

8     Mr. Crawford understands the consequences of his guilty plea,

9     and the significant constitutional rights he gives up by doing

10    so?

11         MR. DELLIGATTI:  Yes, Your Honor.

12         THE COURT:  Mr. Crawford, I find you understand the

13    constitutional and other rights that you are giving up by

14    pleading guilty.

15         Now, knowing all of these things, Mr. Crawford, do

16    you still wish to plead guilty at this time?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Now, has any person forced you, Mr.

19    Crawford, threatened you, coerced you, intimidated you, or

20    talked you into entering a guilty plea against your will?

21         THE DEFENDANT:  No, sir.

22         THE COURT:  Are you acting voluntarily, and of your

23    own free will, in entering this guilty plea?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Are you pleading guilty because you are

1    guilty of the crime charged in Counts 1 through 5 of the

2    Information, that being enticement of a minor?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Mr. Crawford, has anyone promised you or

5    told you something that is different from what I've told you

6    today to get you to plead guilty?

7              THE DEFENDANT:  No, sir.

8              THE COURT:  And have any promises been made to you,

9    other than the promises in the written plea agreement?

10             THE DEFENDANT:  No, sir.

11             THE COURT:  Are you pleading to protect anyone?

12             THE DEFENDANT:  No, sir.

13             THE COURT:  Has anyone promised or predicted the

14   exact sentence which will be imposed on you in this matter?

15             THE DEFENDANT:  No, sir.

16             THE COURT:  Do you understand that, at this time, no

17   one could know the exact sentence which will be imposed?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Are you able -- now, have you been able

20   to fully understand what is going on in these proceedings

21   today?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  If you had any questions, Mr. Crawford,

24   did you feel comfortable to ask those questions?

25             THE DEFENDANT:  Yes, sir.

 1          THE COURT:  Mr. Crawford, I find, then, that your

 2     guilty plea is voluntary.

 3          Now, at this time Mr. Crawford, do you have any

 4     questions or second thoughts about entering a plea of guilty?

 5          THE DEFENDANT:  No, sir, I do not.

 6          THE COURT:  If you would stand.  Now, Mr. Crawford,

 7     how do you plead to Counts 1, 2, 3, 4, and 5 of the

 8     Information, all with which charge you with enticement of a

 9     minor; do you plead guilty or not guilty?

10          THE DEFENDANT:  Guilty.

11          THE COURT:  Thank you, Mr. Crawford.  You may be

12     seated.

13          In the United States of America versus Quionte

14     Crawford, I find that Mr. Crawford is fully competent and

15     capable of entering into an informed plea; that there's a

16     sufficient factual basis for the plea of -- pleas of guilty;

17     that he understands the nature of the charge and the

18     consequences of a guilty plea to these charges; and that he

19     understands the constitutional and other legal rights that he's

20     giving up because of this plea; and that his guilty plea is

21     voluntary.  And while I defer accepting the terms of the plea

22     agreement and adjudging Mr. Crawford guilty to the sentencing

23     Court, Judge Kleeh, I do accept his plea of guilty to Counts 1

24     through 5 of the Information.

25          Now, Mr. Crawford, the sentencing court must consider

1    the following factors when determining the sentence that you

2    will receive:  One, the nature and circumstances of the

3    offense; two, your history and characteristics; three, the

4    necessity of punishing you, deterring you, protecting the

5    public from you, or providing you with training, medical care,

6    or other treatment; four, the kinds of sentences and the

7    sentencing range established by the sentencing guidelines;

8    five, the need to give defendants with similar criminal records

9    similar sentences; and, six, the need to provide restitution to

10   any victims of the offense.  So do you understand those factors

11   the Court will consider?

12          THE DEFENDANT:  Yes.  Yes, sir.

13          Mr. Crawford, in order to help the Court consider

14   these factors, the probation office is required to conduct a

15   presentence investigation of you, and submit a report to the

16   sentencing court.  Now, the information in this report might

17   have an impact on the sentence that you ultimately receive.

18   Therefore, you may want to discuss with your lawyer what

19   options are best for you in this process.

20          Have you all talked about when you will meet with

21   probation, Mr. Delligatti?

22          MR. DELLIGATTI:  Yes, Your Honor.  I've had e-mails

23   going back and forth with Ms. Scolapio.  I believe that the

24   last e-mail, we're going to probably schedule in a couple weeks

25   because --

Stacy Harlow, RVR-M, CVR-M, CM, RCP, RBC
P.O. Box 969 Clarksburg, West Virginia  26301  304.623.7154

1          THE COURT:  Okay.

2          MR. DELLIGATTI:  -- she's going to want to address

3     conditions of release, location monitoring services today.

4          THE COURT:  Okay.

5          MR. DELLIGATTI:  But I haven't been able to call her

6     today because I've been in court for --

7          THE COURT:  I understand.  Okay.

8          Well, I'll talk to you about that in a minute, Mr.

9     Crawford.  Now, Mr. Crawford, you must not commit any crimes

10    between now and sentencing, because there are additional

11    punishments that may be imposed for committing additional

12    crimes.  And do you understand that if there's any attempt to

13    make conduct similar to what you've done in the Information,

14    it's another crime, and it will be sep- -- punished separately?

15    You understand that?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  Now, pursuant to 6A1 of the United States

18    Sentencing Guidelines, I order the probation office to conduct

19    a presentence investigation of Mr. Crawford; prepare a draft

20    presentence investigation report, and disclose its contents to

21    the Government and to Mr. Crawford.  Further direct the

22    probation officer and all parties comply with the Federal Rules

23    of Criminal Procedure 32, U.S. Sentencing Guidelines 6A1.2,

24    regarding deadlines for disclosure, objection, and departure of

25    sentencing statement requirements.

 1          Now, the sentencing court will set this matter for

 2    sentencing, Mr. Crawford.  And when it does so, it will notify

 3    your attorney, Mr. Delligatti, as well as the Government.  And

 4    he'll notify you when that's to take place.  It will be in this

 5    building on the second floor of the courthouse.

 6          THE DEFENDANT:  Okay.  Thank you.

 7          THE COURT:  Now, Mr. Delligatti, Mr. Perri, if you do

 8    anticipate a lengthy sentencing hearing, please notify the

 9    Court so that an adequate amount of time can be scheduled for

10    it.

11          Now, what's -- what will happen, Mr. Crawford, is

12    that -- Mr. Delligatti, has kind of touched on this, but the

13    probation office is going to start the process of a presentence

14    investigation.  That includes talking to you, taking certain

15    background information.  It also includes talking to the

16    Government, and the evidence that they have, what happened.

17    And the plea agreement permits the Government to disclose all

18    that information.

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  They will also look at your history,

21    certain situations.  When they do all that, they'll submit a

22    presentence investigation report.  You'll get it, go it over

23    with your attorney; the Government will get it.  You have a

24    time period -- and the lawyers know what this -- to object to

25    that report if you think its wrong, or if you think something

1    should be added or corrected.  You have to do that within a

2    time period.  The Government has a right to do so, too.  It

3    doesn't mean the Court is going to agree with what you have to

4    say, or the Government has to say.  The Court will always make

5    its own decision, but if you want them to take something into

6    consideration, you need to bring it to their attention, and

7    your lawyer will know how to do that.

8            Now, I understand the Government has not made a

9    motion to detain; is that correct Mr. Perri?

10           MR. PERRI:  That's correct, Your Honor.  The

11   defendant has been cooperative, and we have not been made aware

12   of any concerns or problems with him --

13           THE COURT:  Okay.

14           MR. PERRI:  -- during the -- during the period of

15   time that he -- since these matters came to light, and during

16   the period of time that we were negotiating the Information and

17   the plea.  So we're not moving for detention, and we anticipate

18   that he will continue to be on good behavior.  If, for whatever

19   reason, that changes -- and that I'm sure Mr. Delligatti will

20   not be surprised to hear me say this -- if we become aware of

21   any problems, we will immediately bring the matter of detention

22   back before the Court.

23           THE COURT:  Okay.  Thank you.

24           Well, now, Mr. Crawford, in federal court, when we

25   release someone on bond, you do not have to get a bail

1    bondsman; you don't have to pay money; you don't have to put up

2    property.  We'll release you that -- on bond.  And what bond

3    is, is an order of this Court setting conditions of release.

4    So I'm going to release you subject to the following

5    conditions.  Now, I'm going to go over these with you.  It may

6    seem like a lot.  You're welcome to ask questions when I'm

7    done, but I will tell you that you will -- you'll be required

8    to sign them.  You will be -- I'll also sign them.  You'll then

9    meet with probation after this hearing today.  They will go

10   over it with you, and you will need to sign it.

11          So -- but what I want to say and emphasize is that

12   what Mr. Perri said, if you violate any condition of these

13   release -- this release I go over with you, your bond can be

14   revoked, and then you would remain incarcerated pending

15   sentencing; do you understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  So, Mr. Crawford, you must not violate

18   any federal, state, or local law while on release.  You must

19   cooperate in the collection of a DNA sample, if it is

20   authorized.  You must advise your probation officer -- and

21   you're going to meet that person today -- in writing in advance

22   before you change your -- any change of residence, or telephone

23   number.  You cannot move or change your number without the

24   approval in advance of probation; do you understand that?

25          THE DEFENDANT:  Yes, sir.

1            THE COURT:  If they go to your home that you've given

2     to them, and they say, he moved two weeks ago, your bond will

3     be revoked, and they'll find you, arrest you, and you will be

4     incarcerated; do you understand?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  You -- really I have on there -- there'll

7     really be no further hearings for you, as long as you're

8     compliant, other than your sentencing hearing.

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  And Mr. Delligatti will let you know when

11    that is.

12           You are to report to the probation office today, and

13    I put by 4:00 o'clock on June 20th, that's Thursday.  Mr.

14    Delligatti will -- Mr. Delligatti will tell you where that is.

15    This is 500 West Pike Street, Mr. Crawford.  Probation is

16    located at 320 West Pike Street.

17           THE DEFENDANT:  Okay.

18           THE COURT:  So it's a block and a half up the road.

19    Derek Hotsinpiller Building.  They'll direct you to where it

20    is, but it's an easy walk from here, but you need to report

21    there today --

22           THE DEFENDANT:  Yes.

23           THE COURT:  -- after we're done.  And if you don't

24    report, you've already violated your bond; you'll be arrested

25    as soon as they can find you.  You understand?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Now, again, the Government has indicated

3    that since they brought this to your attention, and your

4    attorney, you've been compliant; you haven't violated any law,

5    that they're aware of, and that's why they're not asking that

6    you be detained.  Are you working, --

7          THE DEFENDANT:  No, I --

8          THE COURT:  -- Mr. Crawford?

9          THE DEFENDANT:  -- got laid off from the oil field.

10   I was on unemployment for a little bit.

11         THE COURT:  Okay.

12         THE DEFENDANT:  I'm in the process of -- soon

13   unemployment will be ending.  I will be looking for new --

14         THE COURT:  Okay.  Well, I'm just going to order that

15   you continue, or actively seek employment.  That you are

16   restricted to the following, in terms of where you live.

17         THE DEFENDANT:  I've lived there for almost two

18   years.

19         THE COURT:  Okay.  Lived in Fairmont?

20         THE DEFENDANT:  Well, I've lived in Fairmont for a

21   long time, but where I'm living at now, I've been there two

22   years.

23         THE COURT:  In Fairmont?

24         THE DEFENDANT:  Yeah.

25         THE COURT:  Okay.  Your residence, the travel, is

1   going to be restricted to the Northern District of West

2   Virginia.  What that means is the Northern District is the top

3   half of the state.  It certainly includes Marion County, the

4   counties surrounding it.  You cannot go into the Southern

5   District of West Virginia.  They'll show you a map where it is.

6   Charleston is the Southern District.

7           THE DEFENDANT:  Okay.

8           THE COURT:  Huntington, Beckley.

9           THE DEFENDANT:  I don't go to them places, anyway.

10          THE COURT:  Yeah, but they'll show you where it is.

11  Cannot leave the state, at all.

12          THE DEFENDANT:  Okay.

13          THE COURT:  If you leave the district or the state,

14  your bond will be revoked.

15          You're to avoid contact, directly or indirectly, with

16  any victims, witness in this investigation, or prosecution,

17  including anyone named in the Indictment.  There is a reason

18  why the boys named in the Indictment are -- are -- their names

19  are not listed.  They're juveniles; out of respect for their

20  privacy, to minimize their embarrassment.  In addition, but

21  it's clear from the testimony, and your testimony, that you

22  know who these boys are.  You can have no contact with them,

23  whatsoever.  Any kind of contact, regardless of how innocent,

24  perceived by you, will violate your bond; do you understand

25  that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  If you're walking down the sidewalk, and

3     they're walking down one side, you just lower your head, cross

4     the street, and go the other way; you understand?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  No contact whatsoever.  If anyone tries

7     to get a hold of you, Facebook, Snapchat in any way, you don't

8     respond; give it to your attorney.

9          THE DEFENDANT:  Yes.

10         THE COURT:  Now, you are -- and there's going to be

11    restrictions, quite frankly, on your access to the Internet.

12    The restriction is you'll have none.

13         You are not to possess a firearm, destructive device,

14    or other weapon.  Do you have a gun?

15         THE DEFENDANT:  I used to; I don't anymore.

16         THE COURT:  And there's none in the home, right?

17         THE DEFENDANT:  No, sir.

18         THE COURT:  If you have one, or it's in your home,

19    it's a violation of your bond.

20         THE DEFENDANT:  Okay.

21         THE COURT:  Not to consume alcohol; you're not to

22    unlawfully possess drugs.  You're to submit to drug testing.

23    Probation will determine how much they test you.  I haven't

24    heard of any allegations of your struggling with substance

25    abuse, but -- so they may just test you periodically.  But if

 1    you miss a drug testing, if you test positive, if you try to

 2    interfere with the testing, that's a violation of your bond,

 3    and it can be revoked.

 4                THE DEFENDANT:  Yes, sir.

 5                THE COURT:  You are to participate in a program of

 6    inpatient or outpatient therapy, if probation thinks it's

 7    helpful to you.  If they tell you they want you to go to

 8    treatment, you have to; and if you don't, that's a violation;

 9    you understand that?

10                THE DEFENDANT:  Yes.

11                THE COURT:  You are to report as soon as possible,

12    any contact with law enforcement, whether it's arrest,

13    questioning, or traffic stops.  Innocent as it may be, you're

14    going home, taillight is out, they pull you over.  You have to

15    report that to probation immediately.

16                THE DEFENDANT:  Okay.

17                THE COURT:  You understand that?

18                THE DEFENDANT:  Yes, sir.

19                THE COURT:  Your name is now on a list.  They're

20    going to pull you over, they're going to see your name, and

21    they're going to report it to probation, because you were

22    pulled over.  So --

23                THE DEFENDANT:  Right.

24                THE COURT:  -- you better tell probation before they

25    hear.

1              You're not to purchase, possess, or use any drug

2    paraphernalia.  You're not to purchase, possess, or consume any

3    synthetic intoxicants.  Are you on any prescription medication,

4    Mr. Crawford?

5              THE DEFENDANT:  Just insulin.  That's it.

6              THE COURT:  Okay.  You a diabetic?

7              THE DEFENDANT:  Yes.

8              THE COURT:  So do you take it by a shot, or by a

9    pill?

10             THE DEFENDANT:  In a syringe.

11             THE COURT:  Okay.

12             THE DEFENDANT:  So I have needles in my home, if

13   that's okay.

14             THE COURT:  Okay.  Well, disclose that to your

15   probation officer.  If you have a prescription, they need to

16   see that and understand that, because, I mean, what do you

17   think when probation comes in the home --

18             THE DEFENDANT:  Right.

19             THE COURT:  -- with needles?

20             THE DEFENDANT:  Right.

21             THE COURT:  So you need to -- you need to disclose

22   that to them.  And I assume you have a prescription for it --

23             THE DEFENDANT:  Oh, yeah.

24             THE COURT:  -- right?

25             THE DEFENDANT:  Yes.

```
 1              THE COURT:  You are prohibited from possessing
 2    vicious animals.  Do you got any pets?
 3              THE DEFENDANT:  I got a Great Dane.
 4              THE COURT:  Big, but I don't think --
 5              THE DEFENDANT:  She's not vicious.
 6              THE COURT:  Okay.  Well, talk -- they're -- just talk
 7    to your probation officer.
 8              THE DEFENDANT:  Okay.
 9              THE COURT:  I -- the point is, is that -- and when
10    I -- we've had probation officers attacked, literally, by dogs
11    jumping up grabbing their arms, and causing scars, stitches
12    when they go to visit someone's home.  And they can come to
13    your home unannounced.
14              THE DEFENDANT:  Yes, sir.
15              THE COURT:  So you can tell them about the dog.
16    That's their decision.  If, for some reason, it creates a
17    problem, then you would need to find another home for it.
18              THE DEFENDANT:  Okay.
19              THE COURT:  But hopefully it won't.
20              You're to participate in mental health counseling, if
21    your probation thinks it's helpful.
22              Now, in addition to these, there are also additional
23    terms in a child pornography case, and they are as follows:
24    You shall not possess or use a computer or other electronic
25    device, including, but not limited, to a cell phone with
```

1    Internet capabilities, capable of being connected to the

2    Internet.  You've -- just revoked someone the other day who,

3    because they went into his home, they found an iPad, laptop,

4    phone, and they got on it, and there he was, looking at

5    pornography.  Let me make it clear, you -- there's -- adult

6    pornography would be a violation of this.  Whatever is

7    considered illegal would be a violation.  You're not to be

8    looking at anything.  You're not to have those devices,

9    considering the crime that you're charged with.

10           Now, -- and you may be able to answer this, Mr.

11   Perri, I do think there are phones out there without Internet

12   capability, although I don't -- you need to talk to probation

13   about that.

14           THE DEFENDANT:  Okay.

15           THE COURT:  I mean, especially in this case.  All

16   your crimes were charged with the use of a phone.  They can

17   pick up and look at those things at any time.  You go in there

18   today and they want to look at your phone, you say, yes, ma'am,

19   yes, sir, and you hand it over to them.

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  Do you understand that?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  And if there's anything on it, you're

24   going to be revoked.  You shall not connect to the Internet for

25   any purpose, any purpose.  You're not to aide or assist another

1   to connect to the Internet.

2           You are not to possess, use a telephone which is

3   capable of taking, storing, or sharing digital images.  You're

4   not to possess any sexually explicit movies.  This can be of

5   adults, videos, CDs, magazines, nor shall you possess any

6   device which stores digital images, but not limited to the

7   digital images of sexually explicit activities.

8           You shall have no contact whatsoever with any child

9   under the age of 18.  You shall not visit any school or public

10  facility where contact with a child under the age of 18 may

11  occur.  There was some talk about baseball.  I am going to tell

12  you, Mr. Crawford, if parents call up and say they saw you at

13  the baseball field, you're going to be revoked.

14          THE DEFENDANT:  Okay.

15          THE COURT:  You just got to stay away.  You

16  understand that?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  I don't -- it doesn't matter to me how

19  innocent you think it is.  You just need to stay away.

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  You are not to have any -- you're to

22  comply with all applicable federal and state sex offender

23  registration requirements, and update the same.  You can talk

24  to your probation officer about that, because there are state

25  and federal.  You are not to associate with any person who is

1    known to you to view pictures of child pornography, sexually

2    explicit and provocative acts of persons under the age of 18.

3    You shall not view any sexually explicit movies, videos, CDs,

4    magazines, nor shall you possess any device which stores or is

5    capable of permitting or viewing these digital images, not

6    limited to additional images of sexually explicit activities.

7           You shall consent -- that's part of these conditions

8    -- to a search of your residence, motor vehicle, storage

9    facility, located on the same property as your residence, by

10   your probation officer, for the purpose of determining whether

11   you're in compliance with this order.  You shall consent to

12   your -- for your probation officer to view, on the premises, or

13   remove any item for viewing, off the premises, which is

14   suspected of being possessed in violation of the order setting

15   conditions of release.  Again, it's a phone, iPad, any kind of

16   electronic device.

17          You are to surrender to your probation officer

18   anything which the officer determines is being possessed by you

19   in violation of the order.  Do you have any questions about

20   anything we've talked about Mr. Crawford?

21          THE DEFENDANT:  No, sir.

22          THE COURT:  You know, know that's a lot.  I'm going

23   to go ahead and sign an order now that will release you on

24   conditions of release.  We're going to give it you, and the

25   clerk will make a copy of it and return it to you.

 1          Now what's -- let's just go ahead and get that done

 2    now.  Also what I want you to understand, Mr. Crawford, is that

 3    the Marshals behind you -- the Marshal is going to -- he's

 4    going to take you downstairs, Mr. Crawford.

 5          THE DEFENDANT:  Okay.

 6          THE COURT:  They'll fingerprint you, and process you.

 7          It shouldn't take what, usually, 15 minutes, a half

 8    an hour, at the most?

 9          UNIDENTIFIED SPEAKER:  Yeah, 15, 20 minutes.

10          THE COURT:  Okay.

11          Now, when you're done, Mr. Crawford, --

12          You going to go down with him, Mr. Delligatti, or

13    maybe -- you're not able to?  If not, that's okay.  It depends.

14          MR. DELLIGATTI:  I may be able to.  I have to get

15    back to Fairmont by 4:00.

16          THE COURT:  That's fine.

17          So, anyway, as soon as you're done there, you go

18    directly to probation.

19          THE DEFENDANT:  Okay.

20          THE COURT:  Do you understand that?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Okay.  You have -- you have any questions

23    about anything we've done here today, Mr. Crawford?

24          THE DEFENDANT:  No, sir.

25          THE COURT:  Okay.

1              Do you have anything else for the Court's

2    consideration, Mr. Perri?

3              MR. PERRI:  No.  Thank you, Your Honor.

4              THE COURT:  Do you have anything, Mr. Delligatti?

5              MR. DELLIGATTI:  Nothing, Your Honor.

6              THE COURT:  Nothing further, we'll be adjourned.

7    (The hearing concluded at 2:39 P.M.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                          CERTIFICATE

 2

 3             I, Stacy Harlow, Realtime Verbatim

 4   Reporter-Master; Certified Verbatim Reporter-Master;

 5   Certificate of Merit; Registered Broadcast Captioner;

 6   Registered CART Provider; and Official Reporter of the United

 7   States District Court for the Northern District of West

 8   Virginia, do hereby certify that the foregoing is a true and

 9   correct transcript to the best of my ability of the taped

10   proceedings had in the above-styled action on June 20, 2019, as

11   reported by me via stenomask.

12        I certify that the transcript fees and format comply with

13   those prescribed by the Court and Judicial Conference of the

14   United States.

15        Given under my hand this 16th day of January, 2020.

16                          /s/Stacy Harlow
                            _____
17                          Stacy Harlow, RVR-M, CVR-M, CM, RBC, RCP
                            Official Reporter, United States
18                          District Court for the Northern
                            District of West Virginia
19                                     -  -  -

20

21

22

23

24

25

            Stacy Harlow, RVR-M, CVR-M, CM, RCP, RBC
      P.O. Box 969 Clarksburg, West Virginia  26301  304.623.7154
```