## ISSUE PRESENTED FOR REVIEW

Whether Crawford's five life sentences were the result of ineffective assistance of counsel in connection with his guilty pleas where Crawford's counsel grossly miscalculated the total offense level, misinformed Crawford about critical reductions for acceptance of responsibility, and incorrectly advised Crawford that his guidelines range was 292-365 months in prison, when black letter law called for a range of life.

## STATEMENT OF THE FACTS

Crawford, age 28, is a first-time offender who is now serving five life sentences at FCI Allenwood, Allenwood, Pennsylvania. It is shocking that these life sentences were the result of a pre-indictment settlement that Crawford's counsel negotiated and recommended. Rational defendants do not agree to settle cases in exchange for life sentences. Here, Crawford settled his case because he was given wildly inaccurate advice by his counsel who failed to study the Federal Sentencing Guidelines and ascertain that this terrible deal would send Crawford to prison for life. By way of background, Crawford lived in West Virginia for most of his life. J.A. 195. He was born in Baltimore, Maryland, but moved to Fairmont, West Virginia, with his mother and sister as a young child. J.A. 218. Crawford's father has been absent throughout his life. Crawford and his sister were exclusively raised by their mother acting as a single parent. Crawford's mother "worked all the time" to ensure he and his sister were clothed and fed. J.A. 238. His mother's work schedule meant he spent most of his time as a child unsupervised at home. J.A. 238. As a teenager, Crawford attended Fairmont Senior High School and played football. J.A. 216, 220. During his teenage years, Crawford was diagnosed with Type I diabetes, and then his mother suffered a stroke during his junior year of high school. During his mother's long recovery, Crawford lived alone without 3 supervision and became homeless for a period. J.A. 219, 238. Despite these difficult years, he graduated from high school, in 2011, and Crawford has maintained employment in various positions as a laborer until he was arrested in connection with the instant offense. J.A. 220-221. Crawford has n⸱ been married and has no children, but he shares a close relationship with his sister, who wor'

nurse in Maryland. J.A. 218-219. On July 6, 2018, Crawford was arrested by members of the Bridgeport Police Department and charged in state court, in Harrison County, West Virginia, through a criminal complaint, with one count of sending obscene matter to a minor via computer. J.A. 217-218. The criminal complaint alleged that Crawford sent photographs of an adult naked female to a 14-year-old male in May 2018. Crawford posted bond that day and hired an attorney, Matthew Delligatti ("Delligatti"), of Fairmont, West Virginia. J.A. 217. At some point, in 2018, the case was referred for federal prosecution and AUSA David Perri issued a "target letter" to Delligatti, informing him that Crawford was under federal investigation. Crawford completed and submitted a federal financial affidavit (CJA 23 form) in support of a request for court-appointed counsel on January 25, 2019. J.A. 3.4 On April 18, 2019, United States Magistrate Judge Michael John Aloi appointed Delligatti to represent Crawford in connection with proceedings before the United States District Court, Northern District of West Virginia. J.A. 3. On May 2, 2019, AUSA Perri sent a pre-indictment plea agreement to Delligatti via U.S. Mail. The plea agreement called for Crawford to (1) waive his right to a grand jury; (2) enter pleas of guilty to an Information alleging five counts enticement of a minor (10-life felonies); (3) register as a sex offender; (4) forfeit one iPhone model 10; (5) waive his right to appeal his conviction and sentence; (6) pay restitution; and (7) cooperate with the government and give signed, sworn statements, grand jury and trial testimony. J.A. 99-105. In exchange for these weighty concessions, Delligatti told Crawford he would receive the following recommendations from the government: a three-level reduction for timely acceptance of responsibility under U.S.S.G. § 3E1.1, and that any sentence of incarceration imposed be at the "low end" of the applicable Guidelines range. J.A. 101. As discussed below, there was no dispute that Delligatti mistakenly advised Crawford about the plea agreement. J.A. 244. Delligatti miscalculated Crawford's total offense level, telling Crawford it was "around 43" when in actual fact it was 51. J.A. 147-148. Delligatti incorrectly advised Crawford that the operation of a three-level reduction for acceptance of responsibility would result in an offense level 5 of 40. J.A. 239-240. Delligatti incorrectly advised

Crawford that at a level 40 in a criminal history category I, Crawford would face a range of imprisonment of 292- 365 months under the advisory Federal Sentencing Guidelines. J.A. 239-240. This opinion was false too, but to Crawford it seemed much better than the guideline range of life Crawford faced without the three-level reduction. So, on May 23, 2019, Crawford executed the plea agreement. J.A. 231-237. Crawford entered pleas of guilty to the five-count Information during a Rule 11 hearing before Magistrate Judge Aloi on June 20, 2019. J.A. 8-12. The Court released Crawford under conditions of supervision and ordered the preparation of a Presentence Investigation Report ("PSR"). J.A. 4-5. The United States Probation Office issued a PSR calling for a minimum term of imprisonment, per count, of 10 years and a maximum term of life under the statute. J.A. 224. As for the guidelines, the PSR stated "[b]ased upon a total offense level of 43 and a criminal history category of I, the guideline imprisonment range is life." J.A. 224 (emphasis added). Delligatti did not object to the PSR. J.A. 126. Rather, on the record, Delligatti candidly admitted the serious legal errors he made in his assessment of the plea agreement, his misunderstanding of the Guidelines, and the adverse impact all of this would have upon Crawford at sentencing.6 Specifically, in a Sentencing Memorandum, Delligatti asked for a downward variance sentence based upon the fact that Crawford "entered his plea agreement upon incorrect advice from [Delligatti]," stating: I incorrectly advised [Crawford] that he would get a three-level acceptance of responsibility reduction from Offense level 43 to Offense level 40 even if the guideline calculation was ultimately above 43 prior to the reduction for acceptance of responsibility. Given Mr. Crawford relied on inaccurate advice from counsel, it would be appropriate to give Mr. Crawford a three-level variant sentence to Offense Level 40. J.A. 239-240 (emphasis added). The United States' Response to the Defendant's Sentencing Memorandum similarly recognized the errors and joined in the request for relief: The United States concedes, however, that the parties, in the course of plea negotiations, contemplated and (erroneously) anticipated that the defendant would be able to reap the benefit of (3) three levels of reduction for Acceptance of Responsibility. It should be noted that the defendant was

basically cooperative with the investigation, that he has not made any attempts to obstruct justice and has not violated his bond; and that he informed the United States of his desire to plead in a sufficiently prompt and timely manner so as to obviate the need to litigate motions or prepare for trial. Unfortunately for the defendant, it appears from the P.S.R. that any levels of Acceptance would come off his total offense level of 51. Such a reduction taken at such a point in the calculation process is of no benefit to the defendant because his total offense level is then capped at 43 (which is less than 48). [U.S.S.G. § 5 Pt. A, Application Note 2.] Accordingly, the defendant requests an adjustment from 43 to 40. [Defendant's Memorandum at p. 3] Because it 7 would preserve the parties' understanding as to whether the defendant would benefit from Acceptance of Responsibility, the United States does not object to such an adjustment. J.A. 244 (emphasis added). At sentencing, the district court acknowledged Crawford's sentencing memorandum and the Government's response to the memorandum. J.A.127. When Delligatti and Crawford were given the opportunity to address the court, Delligatti stated that he was "certainly falling on my sword here in front of the court here today" and argued in favor of a sentence of 292 months. J.A. 144-145. Delligatti explained the events leading up to Crawford accepting the plea of guilty to the Information. Delligatti went through the Guidelines with Crawford and "informed him incorrectly" that in the event that the Guidelines calculation would go above 43, as they did, Crawford would still receive the three-level reduction for acceptance of responsibility, which would reduce his offense level from 43 to 40. J.A. 144-145. Of course, that is not how the Guidelines operate. See U.S.S.G. Chapter 5A, Note 2. In light of this legal error, Delligatti discussed the sentencing memorandum and gave reasons in support of his request for a downward variance. Delligatti asked the district court to consider the variance to a sentence range corresponding to a level 40, which was contemplated under the plea agreement, as a corrective measure. J.A. 145.8 Accordingly, it is a matter of record that Delligatti caused a major problem: he provided Crawford with incorrect advice about the operation of the Federal Sentencing Guidelines and an extremely inaccurate opinion about the

applicable guideline range. J.A. 144-145, 147-148. Delligatti told Crawford that the offense level would be "around 43," and that being the case there would be a three-level reduction to a level 40 and this was a reason to accept the plea offer. J.A. 148. With that in mind, Crawford accepted the plea agreement, and Delligatti suggested that without that inaccurate information, Crawford would not have accepted the plea agreement. J.A. 148, 239-240. AUSA Perri stated that the Government had no objection to the proposed downward variance. J.A. 145. Moreover, AUSA Perri stated to the court that the Government wished to see Crawford "receive the benefit of the bargain that was negotiated in the plea agreement, to the extent that's possible." J.A. 152. After the district court listened to the parties, it denied the motion for a downward variance and rejected the opportunity to correct the errors in the case. Crawford was sentenced to life in prison for each count to run concurrently. J.A. 160. Suffice to say, Crawford received no benefit through the plea agreement or his guilty pleas. On November 26, 2019, Crawford filed a timely notice of appeal. J.A. 191- 192. It is from this conviction and sentences of life that Crawford now appeals