# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### AT CLARKSBURG

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

**v.**                                             **CRIMINAL NO.: 1:19CR35**
                                                   **(Judge Kleeh)**

**QUIONTE CRAWFORD,**

     **Defendant.**

### SUPPLEMENT TO MR. CRAWFORD'S PRO SE PETITION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY PURSUANT TO  28 U.S.C. § 2255.

### INTRODUCTION

This is one of the exceptional cases where relief should be granted for ineffective assistance of counsel in connection with a plea agreement.  After receiving some bad advice, Quionte Crawford ("Crawford") signed a plea agreement.  On May 30, 2019, he waived his right to a grand jury and consented to an Information which was filed in the Northern District of West Virginia, in Clarksburg.  This Information charged Crawford with five counts of enticement of a minor to engage in criminal sexual activity, in violation of 18 U.S.C. § 2422 (b).  Each offense carries a minimum of ten years in prison and a maximum penalty of life in prison.  Crawford entered five guilty pleas and this Court imposed *five life sentences*.

Unquestionably, Crawford's original counsel failed to provide effective assistance in connection with the plea agreement resulting in *five life sentences*.  Specifically, Crawford's counsel failed to provide effective assistance when he failed to study, understand, and accurately explain the operation of the Federal Sentencing Guidelines to Crawford.

This is not a case involving an isolated mistake or a situation where counsel's estimate about the ultimate sentence was a bit off.  Rather, Crawford's counsel committed multiple serious legal errors that prejudiced Crawford.  First, Crawford's counsel told Crawford that the total offense level would be "around 43" when it was 51.  A miscalculation of eight levels is extreme.  Second, Crawford's counsel incorrectly advised Crawford that even if the total offense level rose above level 43, Crawford would still receive a three-level reduction for acceptance of responsibility, resulting in a total adjusted offense level 40.  That critical advice was not in line with the operation of the Guidelines.  *See* U.S.S.G. Ch. 5A.  Finally, Crawford's counsel incorrectly advised Crawford that the applicable guideline range was 292-365 months, when it was *life*.

But for this combination of wildly inaccurate opinions, gross misunderstandings and material legal errors, Crawford avers that he would have proceeded to trial.  Crawford had nothing to lose and much to gain in going to trial.  Crawford respectfully requests that this Court vacate his convictions and sentences and schedule a trial.

## STATEMENT OF THE FACTS

Crawford, age 30, is a first-time offender who is now serving *life* at FCI Allenwood, Allenwood, Pennsylvania.  His life sentences were the result of a pre-indictment settlement that Crawford's original counsel negotiated and recommended.  Rational defendants do not agree to settle cases in exchange for life sentences.  Here, Crawford settled his case because he was given wildly inaccurate advice by his counsel who failed to study the Federal Sentencing Guidelines and ascertain that this dreadful deal would send Crawford to prison for life.

By way of background, Crawford lived in West Virginia for most of his life. J.A. 195.[1]

---

[1]  References to "J.A." indicate the Joint Appendix filed by the parties in connection with the direct appeal.  Most of the background and procedure remain the same and undersigned is

He was born in Baltimore, Maryland, but moved to Fairmont, West Virginia, with his mother and sister as a young child.  J.A. 218.  Crawford's father has been absent throughout his life. Crawford and his sister were exclusively raised by their mother acting as a single parent. Crawford's mother "worked all the time" to ensure he and his sister were clothed and fed.  J.A. 238.  His mother's work schedule meant he spent most of his time as a child unsupervised at home.  J.A. 238.

As a teenager, Crawford attended Fairmont Senior High School and played football. J.A. 216, 220.  During his teenage years, Crawford was diagnosed with Type I diabetes, and then his mother suffered a stroke during his junior year of high school.  During his mother's long recovery, Crawford lived alone without supervision and became homeless for a period of time. J.A. 219, 238.  Despite these difficult years, he graduated from high school, in 2011, and Crawford has maintained employment in various positions as a laborer until he was incarcerated in connection with the instant offense.  J.A. 220-221.  Crawford has never been married and has no children, but he shares a close relationship with his sister, who works as a nurse in Maryland. J.A. 218-219.

On July 6, 2018, Crawford was arrested by members of the Bridgeport Police Department and charged in state court, in Harrison County, West Virginia, through a criminal complaint, with one count of sending obscene matter to a minor via computer.  J.A. 217-218.  The criminal complaint alleged that Crawford sent photographs of an adult naked female to a 14-year-old male in May 2018.  Crawford posted bond that day and hired an attorney, Matthew Delligatti ("counsel"), of Fairmont, West Virginia.  J.A. 217.

At some point, in 2018, the case was referred for federal prosecution and AUSA David

---

relying heavily on the briefs.

Perri issued a "target letter" to counsel, informing him that Crawford was under federal investigation.  Crawford completed and submitted a federal financial affidavit (CJA 23 form) in support of a request for court-appointed counsel on January 25, 2019.  J.A. 3.

On April 18, 2019, United States Magistrate Judge Michael John Aloi appointed counsel to represent Crawford in connection with proceedings before the United States District Court, in the Northern District of West Virginia.  J.A. 3.  Counsel had never been previously appointed to handle such a serious sex case in federal court.  It appears Magistrate Judge Aloi appointed this counsel so Crawford could have the perceived benefit of continuity of counsel, given that counsel had been involved in the associated one-count obscenity case in state court, which was later dismissed in lieu of federal the prosecution.[2]

On May 2, 2019, AUSA Perri sent a pre-indictment plea agreement to counsel by U.S. Mail.  The plea agreement called for Crawford to (1) waive his right to a grand jury; (2) enter pleas of guilty to an Information alleging five counts enticement of a minor (10-life felonies); (3) register as a sex offender; (4) forfeit one iPhone model 10; (5) waive his right to appeal his conviction and sentence; (6) pay restitution; and (7) cooperate with the government and give signed, sworn statements, grand jury and trial testimony.  J.A. 99-105.  In exchange for these weighty concessions, counsel told Crawford he would receive the following recommendations from the government:  a three-level reduction for timely acceptance of responsibility under

---

[2] Of course, this pleading is not intended as a personal attack against counsel.  Counsel for Crawford made mistakes that require reversal.  Yet, counsel for Crawford is not a bad defense lawyer.  The main problem, here, is counsel for Crawford was not qualified to handle a very complicated case like this case.  Federal sex cases are among the most difficult and specialized.  Highly experienced counsel is necessary.  Counsel for Crawford had only been doing federal CJA work for *less than three years*, handling mine-run cases involving drug and firearms.  He lacked the required experience for this case.  At the very least, he needed a second and more experienced CJA attorney to assist.

U.S.S.G. § 3E1.1, and that any sentence of incarceration imposed be at the "low end" of the applicable Guidelines range.  J.A. 101.

As discussed below, there was ***no dispute*** that counsel mistakenly advised Crawford about the plea agreement.  J.A. 244.  Counsel miscalculated Crawford's total offense level, telling Crawford it was "around 43" when, in actual fact, it was 51.  J.A. 147-148.  Counsel incorrectly advised Crawford that the operation of a three-level reduction for acceptance of responsibility would result in an offense level of 40.  J.A. 239-240.  Counsel incorrectly advised Crawford that at a level 40 in a criminal history category I, Crawford would face a range of imprisonment of 292-365 months under the advisory Federal Sentencing Guidelines.  J.A. 239-240.  This opinion was false, but to Crawford it seemed much better than the guideline range of life Crawford faced without the three-level reduction and without the "low end" recommendation.  So, on May 23, 2019, Crawford executed the plea agreement.  J.A. 231-237.

Crawford entered pleas of guilty to the five-count Information during a Rule 11 hearing before Magistrate Judge Aloi on June 20, 2019.  J.A. 8-12.  The Court released Crawford under conditions of supervision and ordered the preparation of a Presentence Investigation Report ("PSR").  J.A. 4-5.

The United States Probation Office issued a PSR calling for a minimum term of imprisonment, per count, of 10 years and a maximum term of life under the statute.  J.A. 224. As for the guidelines, the PSR stated "[b]ased upon a total offense level of 43 and a criminal history category of I, ***the guideline imprisonment range is life***." J.A. 224 (emphasis added). Counsel did not object to the PSR.  J.A. 126.  Rather, on the record, at the sentencing hearing, counsel candidly admitted the serious legal errors he made in his assessment of the plea agreement, his misunderstanding of the Guidelines, and the adverse impact all of this would have

upon Crawford.

Specifically, in a Sentencing Memorandum, counsel asked for a downward variance sentence based upon the fact that Crawford "entered his plea agreement upon incorrect advice from [counsel]," stating:

> *I incorrectly advised [Crawford] that he would get a three-level acceptance of responsibility reduction from Offense level 43 to Offense level 40 even if the guideline calculation was ultimately above 43 prior to the reduction for acceptance of responsibility.* Given Mr. Crawford relied on inaccurate advice from counsel, it would be appropriate to give Mr. Crawford a three-level variant sentence to Offense Level 40.

J.A. 239-240 (emphasis added).

The United States' Response to the Defendant's Sentencing Memorandum similarly recognized the errors and joined in the request for relief:

> The United States concedes, however, that *the parties, in the course of plea negotiations, contemplated and (erroneously) anticipated that the defendant would be able to reap the benefit of (3) three levels of reduction for Acceptance of Responsibility.* It should be noted that the defendant was basically cooperative with the investigation, that he has not made any attempts to obstruct justice and has not violated his bond; and that he informed the United States of his desire to plead in a sufficiently prompt and timely manner so as to obviate the need to litigate motions or prepare for trial. *Unfortunately for the defendant, it appears from the P.S.R. that any levels of Acceptance would come off his total offense level of 51. Such a reduction taken at such a point in the calculation process is of no benefit to the defendant because his total offense level is then capped at 43 (which is less than 48).* [U.S.S.G. § 5 Pt. A, Application Note 2.] Accordingly, the defendant requests an adjustment from 43 to 40.  [Defendant's Memorandum at p. 3] Because it would preserve the parties' understanding as to whether the defendant would benefit from Acceptance of Responsibility, the United States does not object to such an adjustment.

J.A. 244 (emphasis added).

At sentencing, this Court acknowledged Crawford's sentencing memorandum and the

Government's response to the memorandum.  J.A.127.  When counsel and Crawford were given the opportunity to address the Court, counsel stated that he was "certainly falling on my sword here in front of the court here today" and argued in favor of a sentence of 292 months.  J.A. 144-145.

Counsel explained the events leading up to Crawford accepting the plea of guilty to the Information.  Counsel went through the Guidelines with Crawford and "informed him incorrectly" that in the event that the Guidelines calculation would go above 43, as they did, Crawford would still receive the three-level reduction for acceptance of responsibility, which would reduce his offense level from 43 to 40.  J.A. 144-145.  Of course, that is ***not*** how the Guidelines operate.  *See* U.S.S.G. Chapter 5A, Note 2.

In light of this legal error, counsel discussed the sentencing memorandum and gave reasons in support of his request for a downward variance.  Counsel asked this Court to consider the variance to a sentence range corresponding to a level 40, which was contemplated under the plea agreement, as a corrective measure.  J.A. 145.

Accordingly, it is a matter of record that counsel caused a major problem:  he provided Crawford with incorrect advice about the operation of the Federal Sentencing Guidelines and an extremely inaccurate opinion about the applicable guideline range.  J.A. 144-145, 147-148.  Counsel told Crawford that the offense level would be "around 43," and that being the case there would be a three-level reduction to a level 40 and this was a reason to accept the plea offer.  J.A. 148.  With that in mind, Crawford accepted the plea agreement, and counsel suggested that without that inaccurate information, Crawford would not have accepted the plea agreement.  J.A. 148, 239-240.

AUSA Perri stated that the Government had no objection to the proposed downward

variance.  J.A. 145.  Moreover, AUSA Perri stated to the court that the Government wished to see Crawford "receive the benefit of the bargain that was negotiated in the plea agreement, to the extent that's possible."  J.A.152.

After this Court listened to the parties, it denied the motion for a downward variance and rejected the opportunity to correct the errors in the case.  Crawford was sentenced to life in prison for each count to run concurrently.  J.A. 160.  Suffice to say, Crawford received no benefit through the plea agreement or his guilty pleas.

On November 26, 2019, Crawford filed a timely notice of appeal.  J.A. 191-192.  Undersigned counsel filed a notice of appearance and assisted Crawford with a direct appeal before the Court of Appeals for the Fourth Circuit, in case number 19-4876.  On April 21, 2020, Crawford's opening brief and joint appendix were filed with the Fourth Circuit Court of Appeal.  The issue presented was whether Crawford received effective assistance of counsel in connection with his negotiated settlement that resulted in five life sentences.

On May 13, 2020, the Government filed a brief in response.  The Government argued that the record was insufficient to support a claim of ineffective assistance of counsel, which are not normally raised on direct appeal:

> The appellant bears the burden of meeting the Strickland standard by demonstrating both that his counsel's performance was deficient and that he was prejudiced thereby.  Considering the prejudice prong alone, appellant fails to show how the allegedly bad sentencing advice or estimation he received from Defense Counsel was the "but-for" cause of his plea, and that he would otherwise have insisted on a trial.  His statements under oath at the plea hearing, as well as other circumstances, show that he had not been made any promises; that he had been informed of the statutory maximum; that he was aware of the District Court's sentencing discretion; and that he understood the uncertainty inherent in the sentencing process.  With—and based upon—this knowledge, he proceeded to enter to his guilty plea anyway.  The sentence imposed was, in fact, within the statutory maximum and within the discretion of the District

Court.  Thus, he cannot show that he was prejudiced by Defense Counsel's erroneous advice, which primarily pertained to the reduction for Acceptance of Responsibility.

Gov. Brief at 8-9, doc no. 24, in case 19-4876.

On February 19, 2021, the Fourth Circuit issued an Unpublished Opinion affirming Crawford's conviction and sentence.  Document 29 in case 19-4876.  It suggested that the appropriate avenue for relief, if any, is a petition pursuant to 28 U.S.C. § 2255.

On August 23, 2021, Crawford filed a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody raising the issue of ineffective assistance of counsel in connection with his guilty pleas.  Document 44.  Upon review, undersigned counsel avers Crawford can meet his burden of demonstrating material errors and deficient performance by his prior counsel and prejudice.  As discussed below, Crawford proffers additional facts and asks for an evidentiary hearing, if necessary, so that Crawford may adduce the facts under oath to prove he received grossly inadequate advice about his plea agreement, the Guidelines, and sentencing exposure amounting to deficient performance and, critically, that Crawford would have proceeded to trial but for this bad advice.

## ARGUMENT

**A.     Standard for effective assistance of counsel.**

The Sixth Amendment right to counsel is the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  To establish ineffective assistance of counsel, the Appellant must show (1) that his attorney's representation fell below an objective standard of reasonableness, and (2) that counsel's unreasonable errors had a prejudicial effect on the Appellant.  *Id.* at 688, 694.  The two-prong *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Lafler*

*v. Cooper*, 566 U.S. 156, 163 (2012).

In this particular context, the first prong of the *Strickland* test is nothing more than a restatement of the general competency standard.  *Id.*  The second prong, however, is more specific because, to show prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.* at 59.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  In considering a claim of ineffective assistance of counsel, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 690.  However, the Court must review the reasonableness of counsel's conduct against the particular facts of each case.  *Id.*

**B.**     **Trial counsel's failure to research applicable black letter law at the heart of his concern about Crawford's exposure to a long sentence was objectively unreasonable.**

The advice Crawford received was not "within the range of competence demanded of attorneys in criminal cases."  *Via v. Superintendent, Powhatan Correctional Ctr.*, 643 F.2d 167, 171 (4th Cir. 1981) (internal citation omitted).   In Chapter 5, the Federal Sentencing Guidelines clearly indicate that guideline calculations do not end once an offense level rises above level 43.  "In rare cases, a total offense level of less than 1 or more than 43 may result from application of the guidelines.  A total offense level of less than 1 is to be treated as an offense level 1.  An offense level of more than 43 is to be treated as an offense level 43."  U.S.S.G. Ch. 5A, Note 2.

Counsel failed to understand that Crawford's total offense level could rise above 43 to 51.  He failed to understand that even with a three-level reduction for acceptance of responsibility, Crawford would face a total adjusted offense level of 48, which would be treated

as level 43.  Therefore, Crawford faced a guideline range of life, not 292-365 months.  While this scenario does not occur often in federal criminal cases, all counsel had to do was read Chapter 5 of the Federal Sentencing Guidelines in order to determine the correct answer to this critical legal issue.  *See United States v. Curtis*, 360 F. App'x 413, 414 (4th Cir. 2010) (unpublished) (vacating sentence because counsel failed to object to an incorrect guideline range at sentencing amounting to ineffective assistance "given the ease with which counsel should have spotted the error."); *Thompson v. Gansler*, 734 F. App'x 846, 855 (4th Cir. 2018) (unpublished) ("[A]cts or omissions made by counsel under a mistaken belief or an ignorance of law are rarely—if ever— 'reasonable' in light of prevailing professional norms.").

Failing to research Crawford's applicable sentencing guidelines and determine that his applicable guidelines would call for a presumptive life sentence could not "have been the result of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  The Supreme Court has held that it is deficient performance for attorneys to fail "to examine the court file on [a defendant's] prior conviction."  *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).  In *Rompilla*, if counsel had examined the court file of their client's prior conviction, they would have learned compelling mitigation evidence in a capital trial.

Here, merely reading the Guidelines would have revealed that Crawford was subject to a sentencing range of life, which undercut counsel's decision to have Crawford waive his right to a grand jury and then purse a guilty plea to five counts of conviction.  In *Rompilla*, the Supreme Court looked to the American Bar Association Standards for Criminal Justice as a guide for "'determining what is reasonable.'"  *Rompilla*, 545 U.S. at 375 (quoting *Wiggins v. Smith*, 539 U.S. 510, 524 (2003)).  The ABA Standards dictate that "Defense counsel should not recommend to a defendant acceptance of a plea ***unless appropriate investigation and study of the case has***

**been completed**."  Standard 14-3.2 (b), Responsibilities of Defense Counsel, ABA Standards for

Criminal Justice: Pleas of Guilty (2018), (emphasis added) available at:

https://www.americanbar.org/groups/crim_justice/publications.

No such appropriate study was completed here.  In contrast, the bad advice Crawford

received is not like that received by the defendant in *United States v. Lambey*, 974 F.2d 1389,

1394-1396 (4th Cir. 1992).  There, the defendant was given only an estimate by his counsel upon

which he was told he could not rely, and the district court correctly pointed out to the defendant

at the Rule 11 hearing his actual exposure.  While it did not make a finding of ineffective

assistance of counsel, in *Lambey*, the Court seemed to recognize that sufficiently incorrect advice

on sentencing possibilities could satisfy the performance prong of the ineffectiveness of counsel

standard.  *Id.* at 1395.

There is a difference between a bad prediction – as was the case in *Lambey* – and

misinformation about the law:

> [The Court in *Strader v. Garrison*, 611 F.2d 61 (4th Cir. 1979)] was
> careful to explain that there is a difference between a bad
> prediction within an accurate description of the law and gross
> misinformation about the law itself. If the lawyer simply underestimates the
> sentence, there may not be ineffective assistance.  *See United States
> v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992) (en banc). But what
> if he tells his client that the statutory maximum is ten years, and it is
> actually life?  We cannot expect criminal defense lawyers to be
> seers, but we must demand that they at least apprise themselves of
> the applicable law and provide their clients with a reasonably
> accurate description of it.

*Ostrander v. Green*, 46 F.3d 347, 355 (4th Cir. 1995), overruled on other grounds, *O'Dell v.

Netherland*, 95 F.3d 1214, 1222-1223 (4th Cir. 1996); *see also Cooks v. United States*, 461 F.2d

530, 532 (5th Cir. 1972) (holding that "although counsel need not be a fortune teller, he must be

a reasonably competent legal historian" and the court found ineffective assistance of counsel

when the lawyer gave "patently erroneous advice" and failed to accurately advise his client of the penalty).

### C. Counsel's mistaken legal advice prejudiced Crawford.

But for the bad advice about Crawford's right to receive a three-level reduction for acceptance of responsibility and the grossly incorrect advice about the applicable guideline range of 292-365 months, Crawford would have not pleaded guilty. No rational defendant enters a plea of guilty that will result in a life sentence under the Guidelines, except in a death-eligible case. Crawford is no different.

Crawford *proffers* the following facts that he can adduce readily at a hearing with his own sworn testimony:

- Crawford had one meeting with counsel about the plea agreement;

- Counsel did not provide a copy of the plea agreement to Crawford;

- Counsel did not review the individual applicable sections of the Federal Sentencing Guidelines with Crawford and he did not provide copies of the applicable sections;

- Counsel reviewed the Sentencing Table with Crawford and indicated that Crawford would face a total effective sentence of approximately 20 years under the Federal Sentencing Guidelines (85% of 292 months = 248 months - 6 months of hallway house = 242 (20 years + 2 months);

- Counsel never advised Crawford that he could face a life sentence under the Federal Sentencing Guidelines;

- Counsel never provided a written estimate, a written explanation or opinion letter concerning the plea agreement, Crawford's exposure under the Federal Sentencing Guideline or the anticipated total effective sentence;

- Crawford did not fully understand the plea agreement when he signed it and he had no expectation whatsoever that his sentence would exceed approximately 20 years and result in life under the Federal Sentencing Guidelines;

- Crawford would not have accepted the plea agreement had he been properly advised that he faced a sentencing range of life under the Federal Sentencing Guidelines;

- On the day of sentencing, counsel met with Crawford and explained he misadvised Crawford about the operation and application of the Federal Sentencing Guidelines and that Crawford faced a range of life under the Guidelines;

- During that meeting, understanding the true Guideline range, Crawford inquired about whether he could withdraw the plea of guilty;

- Counsel told Crawford he would bring the request to withdraw the guilty plea to the Court's attention at sentencing; and

- Crawford would have proceeded to trial rather than enter pleas of guilty had he been advised he faced a range of life under the Federal Sentencing Guidelines based upon his plea agreement.

Absent the incorrect legal advice, there is a reasonable probability that the outcome of the proceedings would have been different. The central reason counsel provided in support of the guilty plea was to lower the guideline range through a three-level reduction for acceptance of responsibility, which he mistakenly believed would reduce the total offense level to 40. Crawford did not receive that critical benefit because he was not eligible for it in the first place. It was only after being given extremely inaccurate advice that Crawford was persuaded that a plea would be better than a trial.

Contrary to the advice of counsel, Crawford's exposure from a guilty plea was not different from his exposure if he took the case to trial and lost. Even if found guilty of these five charges after trial, his sentence would have been driven by the same guidelines and same relevant conduct as found by the district court. Crawford would have faced the same offense level of 43 as he faced after agreeing to plead guilty. On the other hand, if Crawford was acquitted following trial, he would have faced no prison time. In other words, Crawford had something to gain by going to trial, but nothing to lose.

**D.**    **Fourth Circuit precedent establishes that providing grossly inaccurate advice about a plea agreement constitutes prejudicial ineffective assistance of counsel.**

The Fourth Circuit has ruled that the kind of incorrect legal advice given by Crawford's counsel constitutes prejudicial ineffective assistance.  For example, in *Hammond v. United States*, 528 F.2d 15 (4th Cir. 1975), the accused was induced to plead guilty by his lawyer's incorrect legal advice regarding the benefit of the plea.  Hammond was told that he could be sentenced to 35 or 40 years more if he was found guilty following trial than the law would have actually allowed.  This Court held that:

> This [advice] may well have induced a guilty plea that would not have been forthcoming if Hammond had been correctly told that his plea would reduce his exposure to a maximum sentence by only 30 years rather than by 60 or 65 years….for a relatively young defendant, we can only conclude that erroneous advice that he could be sentenced to 90 or 95 years if he went to trial and was found guilty on all of the charges against him, when in fact the maximum sentence was 55 years and therefore his plea of guilty might save him 30 years and not 60 or 65 years as he was told, constitutes ineffectiveness of counsel.

*Id.* at 18.

In *Tolliver v. United States*, 563 F.2d 1117, 1118-1119 (4th Cir. 1977), this Court vacated a guilty plea that was induced by ineffective assistance of counsel. In *Tolliver*, the accused made clear his desire to take his case to trial.  Tolliver's attorneys made several attempts to persuade him to instead take a guilty plea.  *Id.* To do so, his lawyers told him that his prior drug conviction would expose him to a doubling of his sentence – up to eighteen years – if he was found guilty after trial.  But his lawyers were incorrect.  The prior conviction would not have enhanced his sentence and was likely invalid as a matter of law, due to an intervening Supreme Court decision.  When Tolliver discovered this legal error after entering the guilty plea but before sentencing, he asked his lawyers to file a motion to withdraw his guilty plea.  They did not do so, but instead made an oral motion at sentencing.  Counsel for Tolliver did not explain their legal error at the

ensuing hearing and the motion to withdraw guilty plea was denied. *Id.* at 1120-21.

This Court held that Tolliver's counsel were ineffective because they were unaware "of the precise nature of [his] prior convictions at the time that they repeatedly urged him to plead guilty." *Id.* This resulted in a gross miscalculation of the sentencing exposure.

Such was the case here. Crawford's counsel did not study the Guidelines and, therefore, was unaware of the black letter law that applied to Crawford's case. This resulted in a gross miscalculation of the Guidelines during the negotiations and when counsel recommended that Crawford waive his right to a grand jury and plead guilty to five counts.

E.    **Other Courts of Appeals concur in published opinions that erroneous legal advice and grossly inaccurate estimates in connection with plea agreements constitute grounds to vacate a conviction and sentence.**

The Fourth Circuit's published precedents do not stand alone. For example, in *United States v. Davis*, 428 F.3d 802, 803 (9th Cir. 2005), the accused, a physician, was charged by Indictment with conspiracy to distribute a controlled substance and twelve other drug related offenses. In the days before trial, Davis entered guilty pleas to two counts of using a telephone to facilitate a drug conspiracy, based on a subsequent Information. *Id.* Davis expected a sentence of probation based upon his lawyer's advice. The plea agreement "unambiguously stated" that the maximum sentence Davis would receive was eight years. *Id.* And, as in this case, Davis was accurately advised by the court at the Rule 11 hearing about the maximum possible sentenced he could receive under the statue. Moreover, at the Rule 11 hearing, the government advised Davis it might seek an offense level which would place his guideline range well in excess of maximum sentence of eight years. *Id.*

After receiving the presentence investigation report, which recommended a sentence at the statutory maximum, Davis hired new counsel and moved to withdraw the guilty pleas. *Id.* at

804.  In support of the motion, Davis claimed his former counsel rendered ineffective assistance when he pressured Davis to enter guilty pleas and by telling Davis that his sentence would result in probation.  *Id.*  The former attorney denied promising a sentence of probation, but admitted that he put the possibility of probation on the table before Davis accepted the plea.  *Id.*  The district court applied the two-part test to determine whether the former attorney provided ineffective assistance.  Finding deficient performance, but no prejudice, the district court denied the motion to withdraw and sentenced Davis to the maximum term of imprisonment of eight years.  *Id.*

The Ninth Circuit Court of Appeals vacated the convictions and sentence and remanded the case.  *Id.* at 808.  It held that the district court had discretion to grant the motion to withdraw the guilty pleas, as there was "fair and just reason," including deficient performance by counsel and adequate prejudice.  *Id.*  Counsel for Davis provided deficient advice, luring Davis into accepting the plea agreement because "[u]nder the Sentencing Guidelines there was little, if any, possibility that the defendant would have been sentenced to probation, or anything close to it." *Id.*

The court rejected the argument that there was no prejudice based upon Davis being given accurate information about the maximum sentence at the Rule 11 hearing, namely, eight years, which is precisely what Davis received.  "Here, [the] defendant does not claim that he failed to appreciate the theoretical contours of his plea agreement, but only that his lawyer lured him into pleading guilty by making a grossly wrong prediction of the sentencing range.  In that context, the court's recitation of the maximum possible sentence confirms, but in no way contradicts, the lawyer's wrong prediction."  *Id.* at 807.

Similarly, in *United States v. McCoy*, 215 F.3d 102, 104 (D.C. Cir. 2000), the accused

was charged with conspiracy to distribute and possess an illegal substance.  Before accepting a

plea agreement, defense counsel advised that McCoy would face 188-235 months in prison if he

accepted the offer.  *Id.* at 105.  Defense counsel arrived at this calculation by referencing the

drug quantity table and then determining a base offense level 34.  With a 3-level reduction for

acceptance of responsibility, he determined it would be reduced to a level 31.  *Id.*  Counsel

understood that McCoy would be sentenced as a career offender pursuant to U.S.S.G § 4B1.1

and this would increase the criminal history category to VI.  *Id.*  With this information from

counsel, McCoy accepted the plea agreement and entered a plea of guilty.

 Defense counsel's determination of the sentencing exposure was completely inaccurate.

Critically, counsel failed to realize that section 4B1.1 of the Guidelines enhances not only the

criminal history category of a "career offender," ***but also the base offense level***.  *Id.*  Given that

the offense to which McCoy pleaded guilty had a maximum sentence of life, the career offender

guideline called for a base level a 37, rather than 34.  *Id.*  Therefore, taking into account a

criminal history category VI, the actual sentencing range McCoy faced was 262-327 months, not

188-235 months, as defense counsel calculated.  *Id.*

After receiving the presentence investigation report, McCoy realized his lawyer's error

and McCoy filed a motion to withdraw his guilty plea due to the ineffective assistance of his

counsel.  *Id.*  The district court denied the motion and sentenced McCoy to 262 months in prison.

*Id.* at 106.  McCoy appealed the denial of his motion, arguing, among other things, that his

counsel failed to correctly apply the career offender sections of the Guidelines when calculating

the sentence McCoy would receive.  *Id.*

The Court of Appeals agreed with McCoy, holding that the mistake made by defense

counsel was egregious because -- much like counsel in this case -- counsel for McCoy "failed to

follow the formula specified on the face of the Guidelines." *Id.* at 108.  Familiarity with the structure and basic content of the Guidelines is "a necessity" for criminal defense lawyers to effectively assist clients.  *Id.*  Although, as here, McCoy was never promised a specific sentence, the court still concluded that since McCoy was told by his counsel that his sentencing range was 188-235 months, it was reasonable that McCoy would rely on such range as being credible.  *Id.*

The court also determined that McCoy had shown prejudice, under *Strickland*, because there was a "reasonable probability" that but for counsel's erroneous mistake, he would not have pled guilty.  *Id.* at 107.  McCoy believed that by accepting the plea he would receive a sentence in the range of 188-235 months, but in fact the actual range was 262-327 months.  *Id.* at 108. The range amounted to almost six to eight years in difference and this was enough to show that but for counsel's erroneous mistake, McCoy would not have pled guilty.  *Id.* Likewise, here, but for the errors of counsel, there is a reasonable probability Crawford would not have entered a plea of guilty to a sentencing range of ***life***, which is incalculably greater than the 292-365 for which he bargained.

# CONCLUSION

Crawford received ineffective assistance of counsel in connection with the settlement of this case.  No effective lawyer negotiates a plea agreement calling for a sentence of life under the Federal Sentencing Guidelines.  No effective lawyer fails to study, understand, and accurately explain the operation of the Federal Sentencing Guidelines, especially when the most critical benefit of the plea agreement depends upon getting that right.  No rational defendant enters a plea of guilty in federal court knowing that the presumptive outcome is life in prison, except in a death-eligible case.  But for the wildly inaccurate advice of counsel about the total offense level, acceptance of responsibility and a range being 292-365 months, when it was ***life***, Crawford ***proffers that he would have proceeded to trial***.  Crawford had nothing to lose and much to gain. Crawford respectfully requests that this Court vacate his convictions and sentences and remand his case to the district court for further proceedings.

Respectfully submitted,

**QUIONTE CRAWFORD**

By:     *s/ L. Richard Walker*
        L. Richard Walker
        First Assistant Federal Defender
        WV State Bar No. 9580
        Attorney for Defendant
        Federal Public Defender Office
        230 West Pike Street, Suite 360
        Clarksburg, West Virginia 26302
        Tel. (304) 622-3823
        E-Mail: Richard_Walker@fd.org

## CERTIFICATION OF SERVICE

I certify that on May 12, 2022, I have filed the foregoing with the Clerk's office and an electronic copy will be provided to the following:

**David Perri, Esq.**
**Assistant United States Attorney**
**Office of the United States Attorney**
**Wheeling, WV**

By:      *s/ L. Richard Walker*
         L. Richard Walker
         WV State Bar No. 9580
         Attorney for Defendant
         Federal Public Defender Office
         230 West Pike Street, Suite 360
         Clarksburg, West Virginia 26302
         Tel. (304) 622-3823
         E-Mail: Richard_Walker@fd.org