**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| **QUIONTE CRAWFORD,** | **Criminal No.  1:19CR35** |
| **Petitioner,** | Civil No. 1:21-CV-114 |
| **v.** | **JUDGE KLEEH** |
| **UNITED STATES OF AMERICA,** | **UNITED STATES'** |
| | **RESPONSE TO SUPPLEMENT** |
| **Respondent.** | **TO DEFENDANT'S PRO SE 28** |
| | **U.S.C. § 2255 MOTION** |

Now comes the United States of America by William Ihlenfeld, United States Attorney for

the Northern District of West Virginia, and David J. Perri, Assistant United States Attorney, and

respectfully responds to the "Supplement to Mr. Crawford's Pro Se Petition to Vacate, Set

Aside, or Correct a Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255."

[Document No. 52]

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The underlying criminal case resolved on June 20, 2019 when the petitioner pled guilty by

Information to five counts of Enticement of a Minor – one count for each of five different victims

of his conduct – pursuant to a written plea agreement.  18 U.S.C. §2422(b); [JA at 16-20, 231]

The charges stemmed from an appalling and protracted course of conduct during which the

petitioner employed various forms of psychological and emotional manipulation to deceive and

coerce young teenage boys into sending him penis pictures and masturbation videos of themselves.

[JA at 201-207]  In most instances, while communicating with the boys online via Kik or Snapchat,

the petitioner would portray an attractive and sexually adventurous eighteen year-old girl named

1

Kayla Stevens and utilize a classic "catfishing" approach.  [JA at 201-207]  The petitioner knew all of the boys personally in real life and had ingratiated himself with some of their families so as to be regarded as a trusted friend.  [JA at 201-207]

The Plea Agreement in this case featured the petitioner's signature at the bottom of every page.  [JA at 231-237]  At the bottom of page one, his signature attested to his understanding that (as set forth in Paragraph 2) the maximum penalty to which he would be exposed by virtue of his plea to a charge of Enticement of a Minor would be life in prison.  [JA at 231]  His signature at the bottom of page two signified his agreement that (as set forth in Paragraph 6) there had been ". . . no representations whatsoever by any agent or employee of the United States, or any other law enforcement agency, or Defendant's counsel as to what the final disposition in this matter should and [would] be."  [JA at 232]  Paragraph 9 set forth the parties' stipulation as to relevant conduct with regard to calculation of the Guidelines.  [JA at 233]  However, it was also clearly stated in that paragraph that the Court was "not bound by the above stipulation and . . . not required to accept the same."  [JA at 234]  The petitioner's signature at the bottom of page four evidenced his understanding of this fact.  [JA at 234]  Paragraph 13 provided formal notice of the degree of unpredictability inherent in federal sentencing in stating the following:

> Defendant understands that the United States Sentencing Guidelines are now advisory and no longer mandatory.  It is therefore understood that the sentencing court may ascertain and impose a sentence below or above the applicable Guideline range, so long as that sentence is reasonable and within the statutory maximum specified in Title 18 of the United States Code for the offenses of conviction.

> [JA at 235]

The petitioner, who did not dispute the law or the facts, was willing to accept responsibility. Therefore, there wasn't any pre-trial litigation in this case.  On May 23, 2019, he signed the Plea Agreement.   On June 21, 2019, a plea hearing took place before Magistrate Judge Michael J. Aloi.

2

The petitioner was present in person with counsel.  The plea hearing featured an extraordinarily thorough colloquy designed to ensure that the petitioner's plea was voluntary, knowing, and intelligent.  *See United States v. Wessells*, 936 F.2d 165, 167-68 (4th Cir. 1991); [JA at 15-97] During this colloquy, the petitioner, under oath, answered questions posed by the Magistrate Judge. [JA at 20]  The petitioner admitted signing all of the pages of the Plea Agreement.  [JA at 36]  The provisions of the Plea Agreement were summarized in open court in the presence of the petitioner. [JA at 30-34]

In response to questions from the Magistrate Judge, the petitioner confirmed his understanding that the maximum sentence for the charges to which he was pleading was life in prison.  [JA at 19-20, 64]  The petitioner also acknowledged his understanding that the stipulations of the parties (as set forth in para. 10) were merely recommendations that the Court was not required to follow.  [JA at 38]  The Magistrate Judge went to lengths to make sure the petitioner understood that no one could predict at the time of the hearing the exact sentence that would be ultimately imposed, and even if he disagreed with it, he would still be bound by his plea.  [JA at 68-71]  In the context of this inquiry, the following exchange took place:

> THE COURT: Now, do you understand that the sentence imposed by the Court may be different from any estimate Mr. Delligatti may have given you, or what you thought it would be?
>
> THE DEFENDANT:  Yes, sir.

[JA at 71]

Along these lines, the petitioner confirmed that no promises had been made to him other than those contained in the Plea Agreement.  [JA at 79]  He specifically denied that anyone had promised or predicted the exact sentence that would be imposed on him.  [JA at 79]  He again acknowledged that it would be impossible for anyone to know or predict the exact sentence that

3

would be imposed.  [JA at 79].

The Magistrate Judge made express findings that the petitioner's plea was voluntary and intelligent.  [JA at 74, 80]  Finally, in the process of explaining the procedure for the petitioner's anticipated sentencing, the Magistrate Judge explained to the petitioner that he would receive a copy of the Presentence Investigation Report [hereinafter, "PSR"] and have the opportunity to object to it if he thought it was wrong or if something need to be added or corrected. [JA at 83-84] Specifically, the Magistrate Judge explained it in this manner:

> THE COURT:  Now, they'll submit a presence investigation report. You'll get it, go it over with your attorney; the Government will get it. You have a time period -- and the lawyers know what this -- to object to that report if you think it's wrong, or if you think something should be added or corrected. You have to do that within a time period. The Government has a right to do so, too. It doesn't mean the Court is going to agree with what you have to say, or the Government has to say.  The Court will always make its own decision, but if you want them to take something into consideration, you need to bring it to their attention, and your lawyer will know how to do that.

[JA at 83-84]

The petitioner never objected to the PSR, which the Probation Officer disclosed on August 5, 2019.  [JA at 110-11, 193]  At no time did the petitioner attempt to withdraw his plea, and there is no indication that he ever wanted to do so.  On November 12, 2019, Defense Counsel filed a sentencing memorandum that argued in favor of a downward variance.  [JA at 238-242]

A sentencing hearing took place on November 22, 2019.  [JA at 5, 108, 181]  The hearing lasted nearly two hours.  [JA at 108, 181]  During that hearing, the District Court Judge engaged in a colloquy with the petitioner to doubly ensure that the plea he entered before Magistrate Judge Aloi had been knowing, intelligent, and voluntary.  [JA at 112-13]  The following exchange took place:

> THE COURT:  And during that June 21, 2019 hearing, sir, Magistrate Judge Aloi asked you a number of questions, did he not?

4

    THE DEFENDANT:  Yes, Your Honor.

    THE COURT:  And you answered all of his questions honestly - - as honestly and as accurately as you could; is that correct?

    THE DEFENDANT:  Yes; Your Honor.

[J.A. at 112-13]  The petitioner acknowledged having received and having had an opportunity to review and pose questions about the PSR to counsel.  [JA at 110, 114]  There were no objections to the tentative findings of the Court with regard to the calculation of the Guidelines.  [JA at 126, 147]

    The Court decided of its own accord to treat the "Defendant's Sentencing Memorandum" [Document No. 22] as a motion for a downward variance.  [JA at 127]  The primary request of the motion was that the Court grant a variance of preferably seven - but at least three - levels.  [JA at 238, 241]  The Defense sought three levels of reduction to compensate for the fact that the three-level reduction for Acceptance of Responsibility which the petitioner received did not have any beneficial impact on his Guidelines calculation.  [JA at 144-145, 147-148, 239-241]  Defense Counsel had reportedly believed and advised that the petitioner would receive three levels of reduction from Level 43, the point at which his base offense level had been capped.  [JA at 144, 148, 240]  The petitioner's total offense level would have then become 40.  Level 40 corresponds with an Advisory Guidelines range of 292-365 months, which is less than life.[1]  [JA at 144-145, 147-148, 239-241]

    The Probation Officer, however, deducted three levels for Acceptance from the uncapped total offense level of 51, rather than from the capped, maximum offense level of 43.  [JA at 122-123, 210, 214-15]  This reduction was of no benefit to the petitioner because the maximum offense

---

[1] The highest sentencing range that specifies a finite number of months is "360-life" (Level 42).  The sentencing range that correlates with Level 43 is "life."

level was capped at 43.  [JA at 210]  To be clear, Defense Counsel never claimed that either the

Probation Officer or the Court had miscalculated the Guidelines.  [JA at 126, 147]  Rather, he

opted to ask from the Court an additional three levels of reduction to compensate for his self-

professed error and ensure that the petitioner's total adjusted offense level would be 40 (*i.e.*, less

than life).  [JA at 144-145, 147-148, 239-241]  The United States acquiesced in this request.  [JA at

152, 244]

The Court gave Defense Counsel the opportunity to argue in support of the motion in open

court.  [JA at 143-146, 148]  The Court also provided the petitioner with the opportunity to

allocute, and the petitioner did speak on his own behalf.  [JA at 149]

The Court was unwilling to vary downward as requested, confirmed that the defendant's

total offense level was 43, and imposed a sentence of life in prison for each count to run

concurrently.  [JA at 160]  The Court made a point of mentioning that, even if it had calculated the

petitioner's Guidelines as requested, it still would have varied upward to impose the same sentence.

[JA at 176-177]

Despite having formally waived his right to appeal, the petitioner filed one anyway.  In that

appeal, the petitioner made the same claim addressed herein.  The Fourth Circuit Court of Appeals

affirmed.  *United States v. Crawford*, 836 Fed.Appx. 177 (4th Cir. (Feb. 19, 2021)) (unreported).

The Court of Appeals noted that ineffective assistance claims are not normally addressed on direct

appeal unless an attorney's ineffectiveness appears conclusively on the record.  *Id.*  The Court of

Appeals stated as follows:

> Based on our review of the record and the relevant authorities, we find that the
> present record does not conclusively establish that Crawford would not have pleaded
> guilty but for counsel's erroneous advice.

*Id.*

6

On August 23, 2021, the petitioner filed his *pro se* "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody."  [Document No. 44]   On May 15, 2022, a Supplement to the Motion was filed.  [Document No. 52]

## SUMMARY OF PETITIONER'S CLAIM

The petitioner bears the burden of meeting the *Strickland* standard by demonstrating both that his counsel's performance was deficient and that he was prejudiced thereby.  Considering the prejudice prong alone, petitioner fails to show how the allegedly bad sentencing advice or estimation he received from Defense Counsel was the "but-for" cause of his plea, and that he would otherwise have insisted on a trial.  His statements under oath at the plea hearing, as well as other circumstances, show that he had not been made any promises; that he had been informed of the statutory maximum; that he was aware of the District Court's sentencing discretion; and that he understood the uncertainty inherent in the sentencing process. With this knowledge and based upon this understanding, he proceeded to enter to his guilty plea.  The sentence imposed was, in fact, within the statutory maximum and within the discretion of the District Court.  The only difference between what he expected and what he got had to do with three levels for Acceptance of Responsibility.  Any claims he now makes that he expected or was told he would get a different sentence are belied by his statements on the record.  Even if he was given erroneous advice, he was not thereby prejudiced.

## LEGAL ANALYSIS OF § 2255 CLAIM

The petitioner claims that he received bad advice and/or incorrect information from Defense Counsel regarding the anticipated sentence and relied on that in deciding to plead guilty.

[Supplement at 2]  Specifically, he points out three closely inter-related alleged errors: (1) estimating that the petitioner's total offense level would be 43 when it was actually 51; (2) advising the petitioner that his capped offense level would be reduced three levels from 43 to 40; and (3) anticipating that the applicable sentencing range would be 292-365 when it was actually life. [Supplement at 2, 5]  Assuming *arguendo* that these errors occurred, he was not prejudiced as a result of their occurrence.

a)  *The legal standard for ineffective assistance of counsel.*

It is first necessary to articulate the standard for the establishment of an ineffective assistance of counsel claim.  In order to establish ineffective assistance, the petitioner must first show that Defense Counsel's performance was deficient in the sense that Defense Counsel made errors so serious that counsel was not functioning as the "counsel guaranteed by the Sixth Amendment." *Strickland,* 466 U.S. at 687.  Making a fair assessment of attorney performance

> . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct . . .

*Id.* at 689.  Furthermore, Defense Counsel

> is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 689-91.  Thus, a reviewing court indulges a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance.  *Strickland,* 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what does or does not constitute reasonable performance.  *See Hunt v. Nuth,* 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's performance evaluated in the context of the particular case).  A reviewing court must judge the reasonableness of Defense Counsel's challenged conduct (or omissions) on the facts of the particular case, and all

of the circumstances are to be considered in connection with this very deferential standard. *Strickland*, 466 U.S. at 687-88.

Secondly, the petitioner must show prejudice. He "must establish that . . . there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Furthermore, as the Supreme Court held in *Hill v. Lockhart*, 474 U.S. 52, 53-59 (1985), "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." The Fourth Circuit Court of Appeals recognized this additional burden in *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). The Court held in *Hooper* that a defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have instead insisted on going to trial. *Id.*; *Hill* 474 U.S. at 59; *Premo v. Moore,* 562 U.S. 115, 129 (2011) (quoting *Hill*, 474 U.S. at 59); *Burket v. Angelone*, 208 F.3d 172, 190 (4th Cir. 2000).

If a petitioner "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." *Fields v. Att'y. Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992) (citing *Strickland,* 466 U.S. at 697); *United States v. Rhynes*, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000). The Court need not apply the prongs of the test in any particular order, and if the petitioner fails to establish one, the Court need not inquire as to the other. *Strickland*, 466 U.S. at 697; *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). To be clear, the burden is on the petitioner to establish that both prongs of the *Strickland* test are met. *Id.* at 687; *Fields*, 956 F.2d at 1297.

b) <u>Appellant fails to show that he otherwise would have gone to trial.</u>

As permitted under *Strickland*, the respondent United States begins its analysis by assessing

9

whether the petitioner can establish the prejudice prong. *Fields,* 956 F.2d at 1299; *Moore v*

*Hardee*, 723 F3d 488, 500 (4th Cir. 2013). The petitioner "bears the burden of affirmatively

proving prejudice." *Bowie v. Branker*, 512 F.3D 112, 120 (4th Cir. 2008). To be more precise, he

bears the burden of showing "that there is a reasonable probability that, but for counsel's errors, he

would not have pleaded guilty and would have insisted on going to trial." *Hooper*, 845 F.2d at 475

(4th Cir. 1988); *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007)(quoting *Hill*, 474 U.S. at 59).

The petitioner fails to meet this burden.

The petitioner claims in his Motion (as he did on appeal) that, but for his counsel's

inaccurate advice, the petitioner would not have pled guilty, and instead, gone to trial. [Motion at

2, 9, 13, 20] But there is no support in the record for this claim. Even after learning of the

Probation Officer's calculation of the Guidelines, petitioner did not object to the P.S.R. At no time

did the petitioner attempt to withdraw his plea. There was no mention of "but-for" reliance in

Defense Counsel's Sentencing Memorandum. [JA at 145, 148, 238-242] Nor was there any

mention of "but-for" reliance at the sentencing hearing. At that hearing, although Defense Counsel

talked about the erroneous information had had provided to the petitioner, he stopped short of

saying the petitioner would not have pled but for this advice. [JA at 148] Rather, he said he

thought it had been "a factor" in the petitioner's decision to plead guilty. But it wasn't the only

factor; Defense Counsel also said that sparing the victims the experience of a trial was also "one of

the factors [the petitioner] considered in accepting that plea." [JA at 145] When the petitioner had

the chance to speak on his own behalf, he said nothing about incorrect advice, nothing about

having relied upon it, and nothing about wanting to have a trial. [JA at 149]

Instead of pointing to evidence of "but-for" detrimental reliance, the Supplement makes the

sweeping claim that "[n]o rational defendant enters a plea of guilty in federal court knowing that

the presumptive outcome is life in prison." [Motion at 13, 20]  The respondent takes issue with this premise.  It cannot be disputed that some defendants are remorseful and wish to accept responsibility, fully realizing that there is overwhelming evidence, and that their conduct merits serious punishment under the law.  The petitioner seems to have been one such defendant.  [JA at 54-61,144-46, 149, 156, 239]  The petitioner acknowledged his wrongdoing "from the start" [JA at 239] and was willing to accept responsibility.  [JA at 144-46, 239]  He had no dispute with the facts alleged by the United States.  [JA at 54, 156] and answered without reluctance numerous questions by the Magistrate Judge about his conduct.  [J.A. at 53-59]  He knew from the beginning that he was going to be serving a long time in custody.  [JA at 146]  We know this because Defense Counsel told us so.

> MR. DELLIGATTI:  Regardless of the Court's sentence today, he is going to be serving a long time custody, and he knows that.  He's known that from the start and has not - - not shirked at all in understanding the pain that he's caused families, and also the pain that he's caused his own family.

[JA at 145-46]  Accordingly, when he allocuted, the petitioner made no attempt at protest or minimization or shifting of blame.  [JA at 149]  Instead, referenced the harm he had caused.  [JA at 149]  Defense Counsel made this clear at the very beginning of his Sentencing Memorandum with this statement:

> Mr. Crawford acknowledged his wrongdoing from the start and wished to resolve this matter by a plea to an Information.

[J.A. at 239]   The petitioner may have simply concluded, as a matter of strategy, that, in light of the overwhelming evidence (i.e., transcripts of chat and testimony from five cooperative victims), a trial was a futile and useless exercise.

It should be noted that he had an opportunity to review and ask his lawyer questions about the pre-sentence investigation report.  [JA at 110]  Despite being on notice of the fact that the

reduction for Acceptance was not going to come off of the capped offense level, he chose not to

withdraw his plea.  If the petitioner had ever seriously contemplated exercising his right to a trial in

this case, one would have expected him to attempt to withdraw his plea after learning of his

counsel's mistake.  He did not.  As to the petitioner's decision not to withdraw the plea, Defense

Counsel afforded the following insight as to the appellant's thinking:

> . . . Mr. Crawford also understands that the calculation probably would be unchanged
> if he were to ask to withdraw his plea.

[JA at 144-145]  It appears that he realized that the Probation Officer's calculation was correct, and

that his Guidelines calculation would end up the same regardless.  [JA at 144]  He may have

decided, as a strategy, that his best option was to accept responsibility and try to convince the Court

to grant him a downward variance.  Indeed, there were some factors militating in favor of such a

variance: his lack of record, his remorsefulness, his exemplary performance on bond, the equities

of his expectation regarding Acceptance, the fact that he was looking at a very long sentence *even

with* the requested variance, and the fact that the United States was willing to go along with a

variance of three levels.  Unfortunately for the petitioner, this strategy did not prevail, but that

doesn't mean that his counsel was ineffective.  It may be that petitioner's issue is really with the

fact that the Court exercised its discretion in a way unfavorable to him, and not with Defense

Counsel's performance.

The suggestion that, but for the erroneous advice, the petitioner had nothing to gain by

entering into a plea is incorrect.  In pleading by Information, the petitioner was able to avoid a

public indictment, which would have drawn much more public attention to his conduct, to him, and

to his family.  The Plea Agreement may also have enabled him to avoid a more serious charge such

as Production of Child Pornography (which carries a mandatory minimum fifteen years and no

possibility of a downward variance).  18 U.S.C. § 2251(a).  Most importantly, resolving his case

with a plea also afforded him the opportunity to (finally) do right by these victims by sparing them

the publicity and emotional trauma associated with a trial.  [JA at 145, 149]  This would have had

value for the teenaged boys in as much as they had been duped into producing sexually explicit

images and videos of themselves, and the person who tricked them was *another male* whom they

knew.  Public knowledge of these facts had the potential to make their lives more difficult.  The

small and close-knit nature of the victims' small-town communities could only exacerbate concerns

about embarrassment.  Accordingly, Defense Counsel explained to the Court:

> MR. DELLIGATTI:  Mr. Crawford also acknowledged that the did not want the - -
> and I don't believe it would be appropriate for the victims to be victimized again by
> having to go through a trial, and that was one of the factors considered in accepting
> that plea.

[JA at 145]

Perhaps the petitioner reasoned that, even if he was somehow able to withdraw his plea, and even if

he were able to negotiate a different plea agreement, the Guidelines calculation would have been

calculated the same because the relevant conduct would have been the same.

If anything, the record shows that the petitioner would have pled guilty regardless of

Defense Counsel's alleged errors regarding Acceptance of Responsibility.  It cannot be said,

therefore, that but for Defense Counsel's erroneous and advice and/or estimation of the sentence,

petitioner would have gone to trial.  This means that petitioner cannot show a reasonably

probability that the outcome of the proceedings would have been different absent the incorrect

advice.  The petitioner fails to meet his burden of proving prejudice under *Strickland*.

c)  *Incorrect sentencing advice does not necessarily entail prejudice.*

The petitioner complains of several errors related to a misunderstanding on Defense

Counsel's part about the point at which levels of reduction for Acceptance of Responsibility would

13

be deducted.  Specifically, the petitioner claims that Defense Counsel incorrectly estimated that the total offense level would be "around 43."  [JA at 148]  Defense Counsel had surmised that, even if the Guidelines were calculated to be above level 43, they would be capped at 43.  [JA at 123, 144, 148, 240]  The total offense level was technically 51.  [JA at 214]  But Defense Counsel was actually *right* about the petitioner's offense level being "around 43." [JA at 148]  It was capped at 43, and it *did* end up being 43.  [JA at 122-123]; U.S.S.G. ch. 5, pt. A, app. n.2.  Thus, even if Defense Counsel failed to properly calculate that the total offense level would be greater than 43, that error did not prejudice the petitioner because of the anticipated cap.  The Guidelines range for level 43 is life.

The petitioner also asserts Defense Counsel incorrectly advised him that he would receive three levels reduction for Acceptance of Responsibility, and that the reduction would result in sentence less than life in prison.  Specifically, Defense Counsel advised the petitioner that the adjusted base offense level would be 40 after receiving a reduction of three levels for Acceptance, corresponding to a Guidelines sentencing range of 292-365 months (roughly 24 – 30 years).  [JA at 144-145, 148, 240]   The petitioner *did* in fact receive a reduction of three levels for Acceptance.  [JA at 122-123, 214-215]  However, Defense Counsel was wrong about the point in the process at which that reduction would be taken.  [122-123, 144-145, 148, 214-215]  Three levels of Acceptance were deducted from the total offense level of 51, and not from the capped offense level of 43.  [JA at 122-123, 214-215]  That reduction did not benefit the petitioner in the sense that level 48 was still higher than the level 43 cap.  [JA at 244]  The disparity between Defense Counsel's estimation and the Probation Officer's calculation was three levels.  In sum, the petitioner *did* get three levels of Acceptance as anticipated.  It just didn't make a difference for him.

The petitioner's claim that his counsel was ineffective because he miscalculated the

potential sentence fails as a matter of law.  The Fourth Circuit Court of Appeals has made clear that

bad advice regarding sentencing possibilities will not be deemed a "but for" cause of a guilty plea,

as long as the plea was "based on risk information given . . . by the sentencing court." *United*

*States v. Craig*, 985 F.2d 175, 179-80 (4th Cir. 1993); *United States v. Foster,* 68 F.3d 86 (4th Cir.

1995) (holding that there is no possible prejudice from an incorrect calculation of a defendant's

possible sentence so long as the defendant is properly advised of the maximum sentence he may

receive, and he pleads guilty based on that information and not based on other promises).[2]  Thus,

an erroneous prediction by counsel of what a court will do or what sentence a defendant is likely to

serve does not conclusively establish constitutionally ineffective assistance.  *United States v.*

*Mikalajunas,* 186 F.3d 490, 496-97 (4th Cir. 1999) (holding that the "mere misinterpretation or

application of a guideline provision generally does not constitute a miscarriage of justice that

warrants relief under § 2255."); *Bethel v. United States,* 458 F.3d 711, 717 (7th Cir. 2006) ("An

inaccurate prediction of a sentence alone is not enough to meet the *Strickland* standard.") (citations

omitted), *cert. denied*, 549 U.S. 1151 (2007); *Moreno-Espada v. United States*, 666 F.3d 60, 65

(1st Cir. 2012) ("[Attorney's] failure to properly calculate Moreno's sentence exposure, by itself,

does not amount to prejudice.").

 The petitioner was aware that he could be sentenced to life in prison as punishment for the

offense to which he was pleading.  [JA at 19-20, 64, 146]  He denied having been promised

anything different from what the Magistrate Judge had told him at the hearing "to get [him] to

plead guilty."  [JA at 79]  The Magistrate Judge probed further:

 THE COURT:  Has anyone promised or predicted the exact sentence which will be

---

[2] Nor is an inaccurate estimate of a sentence necessarily indicative of deficient performance.  In *Foster*, the Fourth Circuit stated that because of the discretion that district courts have, "[T]he sentencing consequences of guilty pleas . . . are extraordinarily difficult to predict . . . . Therefore, . . . a mistaken prediction is not enough in itself to show deficient performance, even when that mistake is great . . . ." *Foster*, 68 F.3d at 87-88.

imposed in this matter?

> THE DEFENDANT:  No, sir.

[JA at 79]

The Magistrate Judge also asked:

> THE COURT:  Now, do you understand that the sentence imposed by the Court may be different from any estimate Mr. Delligatti may have given to you, or what you thought it would be?

> THE DEFENDANT:  Yes, sir.

[JA at 69]

The Magistrate Judge wanted to make sure the petitioner understood how the process worked.

> THE COURT:  Now, what will happen, Mr. Crawford - - and I want to share a few more things with you about how this works - - is that the Court will not be able to determine the applicable advisory Guidelines sentence for your case until after it receives the pre-sentence investigation report, and you and the Government have had the opportunity to review it, and to challenge the facts determined by the probation officer and the application of the Guidelines recommended by the probation officer; do you understand that?

> THE DEFENDANT:  Yes, sir.

[JA at 68-69]

The petitioner's sworn statements are accorded significant weight in the course of the prejudice analysis.  *Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977) (stating that a defendant's representations during hearing "may constitute a formidable barrier in any subsequent collateral proceedings"); *United States v. Lemaster,* 403 F.3d 216, 221-22 (4th Cir. 2005) ("T]he truth of sworn statements made during a Rule 11 colloquy is conclusively established."); *United States v. Wilson,* 81 F.3d 1300, 1308 (4th Cir. 1996) (citing and quoting *United States v. Lambey,* 974 F.2d 1389, 1395 (4th Cir. 1992)).  The petitioner presents no evidence that suggests his representations during his plea were untruthful or involuntary, so he is rightly bound by his own sworn statements.

*See Fields,* 956 F.2d at 1299 ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy.")

Because the petitioner entered his plea without having been made any promises and being cognizant of the possible consequences and understanding that the District Court had discretion, he cannot now claim prejudice from mis-advice. *See, e.g.*, *Foster*, 68 F.3d at 88 ("Therefore, if the trial court properly informed Foster of the potential sentence he faced, he could not be prejudiced by any mis-information his counsel allegedly provided him."); *Craig,* 985 F.2d at 179–80 (mis-advice regarding sentencing guidelines could not be "but for" cause of guilty plea where plea was based on risk information given by court); *Harper v. United States*, 661 F. Supp.2d 587, 592-93 (N.D. W.Va. (Oct. 5, 2009)) (no ineffective assistance where Petitioner claimed he would never have entered plea if he had known that he would be sentenced as a Career Offender, contrary to defense counsel's estimation); *McLachlan v. United States,* 2008 WL 4092917 *2 (N.D. W.Va. (2008)) ("[M]iscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel.") (unreported); *Estelle v. United States,* 2015 WL 5016475 *10 (N.D. W.Va. (Aug. 24, 2015)) (no prejudice where petitioner's sentence was unexpectedly enhanced six levels beyond the relevant conduct stipulation of the parties) (unreported); *Bollinger v. United States*, WL 5076390 *9 (W.D. N.C. (Oct. 9, 2019)) (petitioner failed to show prejudice despite not having been told that 30-year maximum sentences for child exploitation offenses could "stack" to create potential for 60-year sentence) (unreported); *Peters v. United States*, 2012 WL 3126819 *4 (E.D. N.C. (July 31, 2012)) (no prejudice where petitioner was sentenced in 262-327 range despite anticipating sentence in 188 to 235 range) (unreported); Ayyad v. United States, 2020 WL 478 4772 (D. Md. (August 17, 2020)) (where full colloquy "remedied any possible prejudice to Petitioner" from attorney's

1´

erroneous prediction of sentence) (citing *Foster*, 68 F.3d at 88) (unreported).

It is clear from the petitioner's responses that, even if he *was* anticipating a sentence in the 292-365 range, he was also aware the District Court *could* vary all the way up to the maximum.  He signed the Plea Agreement and went through with the plea anyway.  Thus, he fails to show that he was prejudiced by the bad advice and/or estimation.  Because he cannot satisfy the prejudice prong of the *Strickland* analysis, there is no need to ascertain whether Defense Counsel's performance was in fact deficient.

 *d)  Petitioner's new effort to demonstrate prejudice.*

The petitioner's Supplement contains a list of new alleged facts that he is reportedly prepared to establish at a hearing through his own testimony.  In as much as this new evidence has been "proffered" to the Court, they will be addressed herein in the context of the performance and prejudice analysis.  These self-serving assertions are contravened by the record of this case.

 **1)  One meeting with Defense Counsel.**

Even if this is true, the petitioner fails to explain why one meeting, if thorough, could not suffice to achieve understanding.  Nor does he provide any authority indicating that a defense attorney must meet on multiple occasions with a client prior to a plea hearing.  Nor does he address any other available modes of communication which may have been utilized.  Any suggestion by the petitioner that one meeting is tantamount to deficient performance is unexplained and unfounded.  It should be noted that the petitioner had no complaints about Defense Counsel at the time of the plea hearing.  [JA at 73]

 **2)  Providing a copy of the Plea Agreement to the petitioner.**

The petitioner fails to provide any authority indicating that a defense attorney must provide a copy of a plea agreement to his client, especially if he goes through a copy with his client

in person.  [JA at 3 6]  Any suggestion that failing to provide a copy is tantamount to deficient performance is unexplained and unfounded.

    **3)  Reviewing the applicable Guidelines with the petitioner and providing a copy.**

This claim is contravened by the record.  The petitioner confirmed under oath at the plea hearing that he and Defense Counsel had discussed the application of the Guidelines.  [JA at 67]  Defense Counsel also represented to the Court at the sentencing hearing that he "went through the Guidelines with Mr. Crawford."  [JA at 144]

The petitioner fails to provide any authority indicating that a defense attorney must provide a copy of the Guidelines to his client, especially if he goes through them with his client in person.

    **4)  &  5)   Telling the petitioner he would get 20 years and not telling him he could get life.**

Any claim that the defendant was unaware of the extent of his sentencing exposure is contravened by the record.  The record shows that the petitioner was told and understood that (with or without a reduction for Acceptance) he could face a life sentence.  The Plea Agreement itself, which the petitioner read and signed, clearly stated the minimum and maximum sentences to which he would be exposed.  [JA at 36, 146, 231]  The petitioner was then advised orally of his sentencing exposure when the Undersigned Counsel for the United States summarized the Plea Agreement in open court.  [JA at 30]   Later in hearing, the Magistrate Judge made a point of telling the petitioner that his sentence "could be up to life" in an effort to make sure that he understood that.  [JA at 64]  Furthermore, the Stipulation Paragraph of the Plea Agreement referenced the application of a Cross Reference to the Production Guidelines and a number of enhancements.  [JA at 233]  The petitioner acknowledged under oath that he had "discussed the

application of the Guidelines" with Defense Counsel prior to the plea hearing.  [JA at 67]  Defense

Counsel also represented to the Court at the sentencing hearing that he "went through the

Guidelines with Mr. Crawford."  [JA at 144]  The record also tells us that Mr. Delligatti advised the

petitioner that the Guidelines were merely guidelines, and the Court was not required to follow

them.  [JA at 148]  The petitioner understood.  [JA at 155]  The petitioner was informed that the

Court's broad sentencing discretion included the discretion to vary upward.  [JA. at 148-49]

The petitioner also confirmed under oath that no one promised or predicted for him prior to

his plea the sentence which would eventually be imposed.  [JA at 79]  If he represented under oath

he hadn't been made any promises or predictions, how can he now can now claim that he relied to

his detriment on a prediction by Defense Counsel as to what what the sentence would be?

"Courts must be able to rely on the defendant's statements made under oath during a

properly conducted Rule 11 plea colloquy."  *United States v. Lemaster*, 403 F.3d 216, 216, 221-22

(4th Cir. 2005); *United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir. 1992) (*en banc*), *cert.*

*denied*, 513 U.S. 1060 (1994); *Fields*, 956 F.2d at 1299 ("Absent clear and convincing evidence to

the contrary, a defendant is bound by the representations he makes under oath during a plea

colloquy."); See, e.g., *Hansard v. United States*, 2022 WL 682985 (N.D. W. Va. (February 11,

2022)) (in light of statements on the record, petitioner unable to show that, but-for the alleged

misinformation, he would not have entered into the plea agreement, and unable to show prejudice);

*Ervin v. United States*, 2021 WL 5042984 (W. D. N. C. (October 29, 2021)) (unreported) (record

contradicted claims that attorney miscalculated sentencing exposure); *Ashlock v. United States*,

2013 WL 5275908 (E. D. Va. (Sept. 19, 2013)) (unreported) (record undermined claim that

attorney represented sentence would be no more than five years).

Furthermore, according to Defense Counsel, their estimation was that his Total Offense

Level would be "around 43." [JA at 148]  And that is exactly what his offense level ended up being.  [JA at 215]  That offense level corresponds to a sentence of life.

The petitioner's claim that he did not know he could face a sentence of life is belied by the record.

### 6)  Providing a written estimate or opinion letter.

The petitioner fails to provide any authority indicating that it is necessary for a defense attorney to provide a written estimate or opinion letter regarding sentencing to his client.  Any suggestion that failing to provide a copy is tantamount to deficient performance is unexplained and unfounded.

### 7)  Understanding of the Plea Agreement and expectation as to maximum sentence.

This claim is belied by the record for the reasons set forth above.  There is no way that the petitioner could not have been aware at the time he signed his plea agreement, or at the time he entered his plea, that his sentence could exceed 20 years.  Indeed, the Magistrate Judge made the following finding:

> THE COURT:  Mr. Crawford, I find that you understand and agree with the terms contained in the Plea Agreement . . . .

[JA at 39]  Later in the hearing, the Magistrate Judge made this finding:

> THE COURT:  . . . I find that Mr. Crawford . . . understands the nature of the charge and the consequences of the guilty plea to these charges . . . .

[JA at 80]

This Court re-affirmed the petitioner's understanding at the sentencing hearing. The following exchange took place:

> THE COURT:  When you signed that Plea Agreement, Mr. Crawford, you knew that you were subject to a potential life sentence, correct, sir?

THE DEFENDANT:  Yes, sir.  Yes, Your Honor.

This claim is baseless.

**8)  Willingness to accepted plea if informed of sentencing range of life.**

This claim is contravened by the record of the case.  As set forth above, the petitioner *was* informed by the United States, by the Court, and by his counsel that he could face life in prison. He knowingly and voluntarily entered the plea anyway.

**9)  Meeting on the day of sentencing in which Defense Counsel admitted error.**

If the petitioner is hereby suggesting that he did not know that he faced a sentencing range of life, the suggestion is contravened by the record.  It appears from the record that the petitioner had the opportunity to go through the P.S.R. with his counsel and ask any questions he might have had.  [JA at 110]  The petitioner does not claim he never received a copy of the P.S.R.

**10)  & 11) Inquiry about withdrawal of guilty plea and discussion of same with court.**

Even if true, the alleged fact that the petitioner inquired about the possibility of attempting to withdraw the plea is of no consequence to the analysis.  It should be noted that the petitioner stops short of claiming that he asked Defense Counsel to withdraw the plea. [Supplement at 14]  The petitioner was given the opportunity to allocate and said nothing about wanting to withdraw his plea.  [JA at 149]  Apparently, he agreed with Defense Counsel's explanation at the hearing that doing so would have been futile.  [JA at 144-45]

**12)  Whether the petitioner would have proceeded to trial.**

This claim has no basis in the record.  In fact, the record tends to show that the petitioner would *still* have pled guilty even if he had been properly advised about the reduction for Acceptance because he acknowledged responsibility and wanted to spare the victims from having to go through a trial.  [JA 144-46]  Defense Counsel provided some insight:

> MR. DELLIGATTI:  From the time Mr. Crawford was arrested by Bridgeport Police in July of 2018, he has made it clear that he was willing to accept the wrong and the trauma that he caused to the individuals, the victims in this case, and their families. As part of that, during the negotiation of this plea, the offer was made that was ultimately entered into to plead to an Information, and with several enhancements that were set forth in the pre-sentence report.

[JA at 144]

These proffered facts are contravened by the record and otherwise unhelpful to the petitioner in meeting his burden to show prejudice.  An evidentiary hearing would only afford the petitioner the opportunity to make self-serving statements.

    *e)  The sentence would have been the same even if the reduction had been granted.*

The petitioner fails to acknowledge that, even if the Court had granted a variance to level 40, or to level 38, it would have varied upward to a sentence of life based on the egregious conduct in this case.  [JA at 176-77]  He would have gotten the same sentence regardless.  Therefore, the bad sentencing advice did not prejudice him.

CONCLUSION

The allegedly bad sentencing advice rendered by the petitioner's lawyer was not the "but-for" cause of the petitioner's guilty plea.  Because he cannot satisfy the prejudice prong of the *Strickland* standard in the context of a guilty plea, ineffective assistance is not conclusively apparent from the record of the proceedings.

WHEREFORE, the United States respectfully requests that the petitioner's Motion be denied without a hearing.

Respectfully submitted,

WILLIAM IHLENFELD
UNITED STATES ATTORNEY

By: /s/ David J. Perri
     David J. Perri
     Assistant United States Attorney/Bar Number: 9219
     United States Attorney's Office
     1125 Chapline Street, Suite 3000
     Wheeling, West Virginia 26003
     Telephone: (304) 234-0100
     E-mail: David.Perri@usdoj.gov

CERTIFICATE OF SERVICE

I, David J. Perri,  Assistant United States Attorney for the Northern District of West Virginia,

hereby certify that the foregoing UNITED STATES RESPONSE TO SUPPLMENT TO

DEFENDANT'S 28 U.S.C. § 2255 MOTION electronically filed with the Clerk of the Court using

the CM/ECF system, which will send notifications of such filing to the following:

Richard Walker, Esq.
2330 West Pike St., Ste.360
Clarksburg, WV 26302

Dated: July 25, 2022.


By:     /s/ David J. Perri
        David J. Perri
        Assistant United States Attorney/Bar Number: 9219
        United States Attorney's Office
        1125 Chapline Street, Suite 3000
        Wheeling, West Virginia 26003
        Telephone: (304) 234-0100
        Fax: (304) 234-0111
        E-mail: David.Perri@usdoj.gov