**IN THE UNITED STATES DISTRICT COURT**
**FORTHE NORTHERN DISTRICT OF WEST VIRGINIA**
**Clarksburg**

**QUIONTE CRAWFORD,**

    Petitioner,

v.                                        Crim. Action No.   1:19-CR-35
                                             Civil Action No.    1:21-CV-114

**USA,**

    Respondent.

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On August 23, 2021, Quionte Crawford ("petitioner"), proceeding *pro se*, filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Civil Action Number 1:21-CV-114 Doc. 1; Criminal Action Number 1:19-CR-35 Doc. 44].[1] Petitioner, through Assistant Public Defender L. Richard Walker, petitioner's appellant counsel, had previously filed a motion to appoint counsel for the purpose of assisting petitioner with his habeas petition. [Doc. 42]. On August 31, 2022, the Court granted the Motion and appointed Mr. Walker as counsel for the habeas petition. [Doc. 47]. On May 12, 2022, petitioner filed a Supplement to his original petition, which is essentially an amended petition. [Doc. 52]. On July 25, 2022, respondent filed a response in opposition to the Supplement. [Doc. 58]. The matter is currently pending before the undersigned for a Report and Recommendation pursuant to LR PL P 2. For the reasons stated below, the undersigned recommends that the District Judge deny and dismiss petitioner's motion.

---

[1] From this point forward, all document numbers refer to petitioner's criminal action.

1

## II.    PROCEDURAL HISTORY

**A. Conviction and Sentence**

On May 30, 2019, the United States Attorney filed Information charging petitioner with five counts of enticement of a minor in violation of 18 U.S.C. § 2422(b). On June 20, 2019, petitioner appeared before the undersigned for a plea hearing at which he entered a plea of guilty to all five counts pursuant to a plea agreement. As summarized in petitioner's supplement to the petition, it is undisputed that prior to entering his plea agreement, petitioner's plea counsel gave him mistaken advice on the application of the Sentencing Guidelines:

> Counsel miscalculated Crawford's total offense level, telling Crawford it was "around 43" when, in actual fact, it was 51. Counsel incorrectly advised Crawford that the operation of a three-level reduction for acceptance of responsibility would result in an offense level of 40. Counsel incorrectly advised Crawford that a level 40 in a criminal history category I, Crawford would face a range of imprisonment of 292-365 months under the advisory Federal Sentencing Guidelines. This opinion was false, but to Crawford it seemed much better than the guideline range of life Crawford faced without the three-level reduction and without the "low end" recommendation.

[Doc. 52 at 5] (citations omitted). In the commentary to the Sentencing Table, the Sentencing Guidelines state:

> In rare cases, a total offense level of less than 1 or more than 43 may result from application of the guidelines. A total offense level of less than 1 is to be treated as an offense level of 1. An offense level of more than 43 is to be treated as an offense level of 43.

U.S.S.G. Chap 5, Pt. A n.2. Counsel's advice was based on a mistaken reading of that note: he believed that the offense level would be capped at 43 and then the Court would apply a three-level reduction for acceptance of responsibility.

On November 22, 2019, petitioner appeared before Judge Kleeh for sentencing. Judge Kleeh reviewed the Presentence Report with the parties and determined that the

applicable offense level was 51; applying a three-level reduction for acceptance of responsibility would result in an offense level of 48.  However, applying comment 2 above, the Judge found that because the total offense level exceeded 43, it would be treated as a total offense level of 43.  Petitioner's plea counsel brought his mistake to the Court's attention and asked the Court to consider a downward departure:

> In our discussions leading up to the plea agreement being entered into, I went through the Guidelines with Mr. Crawford, and also informed him incorrectly that in the event that the Guideline calculation would go beyond 43 that he would still get acceptance of responsibility of the three-level reduction.  That's not the case and, nevertheless, Mr. Crawford also understands that that calculation would probably be unchanged if he were to ask to withdraw his plea.

[Doc. 38 at 39–40].  Counsel then asked the Court to consider a downward variance, to sentence petitioner at an offense level of 40, to match the offense level petitioner anticipated when entering into the plea agreement.[2]  Petitioner's criminal history category was I.  With a criminal history category I, an offense level of 40 would have resulted in a Guideline range of 292–365 months of imprisonment; with an offense level of 43, the Guidelines recommend life imprisonment.  U.S.S.G Chap. 5, Pt. A.  In response, the Government stated:

> we do not have objection to an adjustment of three levels, because I think it's the right position to take.  And we would like to see the bargain – the defendant receive the benefit of the bargain that was negotiated in the plea agreement, to the extent that that's possible.

[Doc. 38 at 47].  Likewise, in its response to petitioner's sentencing memorandum, the United States conceded "that the parties, in the course of plea negotiations, contemplated and (erroneously anticipated that the defendant would be able to reap the benefit of (3)

---

[2] The undersigned notes that the plea agreement does not specify a specific offense level and makes clear that the Court is not bound by recommendations in the agreement.

3

three levels of reduction for Acceptance of Responsibility." [Doc. 25 at 2]. Thus, both parties were under the mistaken belief that the three-level reduction for acceptance of responsibility would affect the Guideline range in this case.

The Court imposed a sentence of life imprisonment as to each count, to be served concurrently. In doing so, Judge Kleeh stated:

> This Court denied the motion and request for downward variance, for the reasons articulated. This Court would note, also that had the defendant's Guideline range been different than a total offense level 43, the range varies as to what counsel suggests as to where Mr. Crawford would fall under the total offense level. He would be a Criminal History Category I regardless, but considering the egregious nature of Mr. Crawford's offenses and the underlying behavior that forms the basis for those offenses, that the Court is not going to repeat again, but that has been a part of the record herein, this Court would have considered and granted an upward variance to the sentence it has imposed in this case, regardless of the total offense level, whether it had been 38 or higher.

[Doc. 38 at 71–72].

**B. Appeal**

On November 26, 2019, petitioner filed a Notice of Appeal. On appeal, petitioner raised a single claim: that his plea counsel rendered ineffective assistance of counsel by incorrectly advising him of the advisory Sentencing Guideline range prior to the entry of his plea of guilty. The Fourth Circuit, noting that ineffective assistance claims are not generally addressed on direct appeal unless the ineffectiveness appears on the face of the record, affirmed the judgment. [Doc. 40 at 2].

**C. Federal Habeas Corpus**

On August 23, 2021, petitioner filed the instant petition. As set forth above, petitioner filed a supplement to the petition on May 12, 2022, and respondent filed a response in opposition on July 25, 2022. The petition and supplement raise a claim of

ineffective assistance of counsel.  As summarized by petitioner,

> Crawford's counsel committed multiple serious legal errors that prejudiced Crawford.  First, Crawford's counsel told Crawford that the total offense level would be "around 43" when it was 51.  A miscalculation of eight levels is extreme.  Second, Crawford's counsel incorrectly advised Crawford that even if the total offense level rose above 43, Crawford would still receive a three-level reduction for acceptance of responsibility, resulting in a total adjusted offense level of 40.  That critical advice was not in line with the operation of the Guidelines.  *See* U.S.S.G. Ch. 5A.  Finally, Crawford's counsel incorrectly advised Crawford that the applicable guideline range was 292-365 months, when it was *life*.

[Doc. 52 at 2].  Petitioner argues that but-for the erroneous advise of counsel, he would have proceeded to trial.  For relief, petitioner asks that his convictions and sentences be vacated.

### III.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a prisoner may file a motion challenging the sentence imposed by a federal court, "if (1) the sentence violates the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum; or (4) the sentence 'is otherwise subject to collateral attack.'"  **Beyle v. United States**, 269 F. Supp. 3d 716, 725 (E.D. Va. 2017) (quoting 28 U.S.C. § 2255(a)).  "A sentence is 'otherwise subject to collateral attack,' if a petitioner shows that the proceedings suffered from 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *Id*. (quoting **United States v. Addonizio**, 442 U.S. 178, 185 (1979)).  "A petitioner bears the burden of proving one of those grounds by a preponderance of the evidence."  *Id*. (citing **Miller v. United States**, 261 F.2d 546, 547 (4th Cir. 1958)).  "If he satisfies that burden, the court may vacate, set aside, or correct the sentence."  *Id*. (citing 28 U.S.C. § 2255(b)).  "However, if the motion, when viewed against the record, shows that the petitioner is entitled to no relief, the court

5

may summarily deny the motion." *Id*. (citing **Raines v. United States**, 423 F.2d 526, 529 (4th Cir. 1970)).

## IV. ANALYSIS

Criminal defendants have a Sixth Amendment right to effective legal assistance. **Strickland v. Washington**, 466 U.S. 668, 687 (1984). To establish that counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: first, he must show both that counsel's performance fell below an objective standard of reasonableness and, second, that he was prejudiced by counsel's alleged deficient performance. *Id*. at 669.

When considering the reasonableness prong of **Strickland**, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689; *see also* **Gray v. Branker**, 529 F.3d 220, 228–29 (4th Cir. 2008). This first prong requires the petitioner to "'show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" **Lewis v. Wheeler**, 609 F.3d 291, 301 (4th Cir. 2010) (quoting **Strickland**, 466 U.S. at 688). The court must judge counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time." **Strickland**, 466 U.S. at 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." **Strickland**, 466 U.S. at 689. When making an ineffective assistance of counsel determination, a court must consider "the practical limitations and tactical decisions that counsel faced." **Bunch v. Thompson**, 949 F.2d 1354, 1363 (4th Cir.1991).

6

To satisfy the prejudice prong of **Strickland**, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. **Id**. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." **Id**. This second prong requires the petitioner to show that counsel's errors were serious enough to deprive the petitioner of a fair trial. **Strickland**, 466 U.S. at 687. If it is clear the petitioner has failed to satisfy either prong of the **Strickland** standard, a court need not inquire into whether he satisfied the other.

As Judge Hollander stated so well in **Wilson v. United States**, 2016 WL 1366024, at *12–13 (D. Md. April 6, 2016) (Hollander, J.):

> First, the petitioner must show that his attorney's performance fell "below an objective standard of reasonableness," measured by "prevailing professional norms." **Strickland**, 466 U.S. at 688. This is known as the "performance prong" of the test, which relates to professional competence. In this regard, the petitioner must establish, by a preponderance of the evidence, that "'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment.'" **Harrison v. Richter**, 562 U.S. 86, 104 (2011) (quoting **Strickland**, 466 U.S. at 687).
>
> The performance prong is "'difficult'" to establish. **Lawrence v. Branker**, 517 F.3d 700, 709 (4th Cir. 2008) (quoting **James v. Harrison**, 389 F.3d 450, 457 (4th Cir. 2004)). "Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance'" **Branker**, 517 F.3d at 708 (quoting **Strickland**, 446 U.S. at 689); see **Harrington** [**v. Richter**], 562 U.S. at 104 [(2011)]; **Lee v. Clarke**, 781 F.3d 114, 122 (4th Cir. 2015). Indeed, "the **Strickland** standard must be applied with scrupulous care." **Harrington**, 562 U.S. at 105.
>
> As to performance, the central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." **Id**. at 88 (quoting **Strickland**, 466 U.S. at 690). The Supreme Court said in **Kimmelman v. Morrison**, 477 U.S. 365, 381 (1986): "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the

7

> circumstances, and the standard of review is highly deferential."
>
> Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." ***Strickland***, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Id***. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. ***Id***.
>
> As the Supreme Court said in ***Padilla*** [***v. Kentucky***], 559 U.S. at 371 [(2010)], "Surmounting ***Strickland's*** high bar is never an easy task." A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." ***Berghuis v. Thompkins***, 560 U.S. 370, 390 (2010).
>
> A court need not address both components if one is dispositive. ***Jones v. Clarke***, 783 F.3d 987, 991 (4th Cir. 2015). This is because the petitioner must prove both prongs in order to prevail; failure to satisfy either prong is fatal to a petitioner's claim. ***Fields v. Attorney Gen. of Maryland***, 956 F.2d 1290, 1297-99 (4th Cir. 1985). As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." ***Strickland***, 466 U.S. at 697. Thus, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." ***Strickland***, 466 U.S. at 697.

***Wilson v. United States***, 2016 WL 1366024, *12–13.

Here, the undersigned finds that petitioner has established the performance prong of ***Strickland***. The facts surrounding the advice given by plea counsel are not in dispute: plea counsel misunderstood the application of the Sentencing Guidelines to petitioner's criminal case and advised petitioner his offense level would be 40 instead of 43. Significantly, this meant that he advised petitioner that his Guideline range would be 292–365 months rather than life. Even indulging in the "strong presumption" that plea counsel's conduct fell within the wide range of professional conduct, the error in this case was such that counsel was not functioning as "counsel" as guaranteed by the Sixth Amendment. "[A]cts or omissions made by counsel under a mistaken belief or an ignorance of law are rarely—if ever— 'reasonable' in light of prevailing professional

8

norms." **Thompson v. Gansler**, 734 F. App'x 846, 855 (4th Cir. 2018) (unpublished) (collecting cases). Nor can counsel's advice in this case be considered a strategic choice: "an act or omission undertaken by counsel in ignorance of the law can be deemed objectively reasonable if and only if the failure to conduct legal research itself reflected a 'reasonable professional judgment[ ].' **Strickland**, 466 U.S. at 690–91, 104 S.Ct. 2052." **Wright v. Clarke**, 860 F. App'x 271, 278 (4th Cir. 2021). Clearly, the performance prong is met here.

Turning to the prejudice prong of **Strickland**, petitioner must establish that but-for plea counsel's error, the result of the proceedings would have been different. In particular,

> When a defendant challenges a conviction entered after a guilty plea, [the] "prejudice" prong of the test is slightly modified. Such a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." **Hill v. Lockhart**, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

**Hooper v. Garraghty**, 845 F.2d 471, 475 (4th Cir. 1988). As in **Hooper**, the undersigned gives little weight to petitioner's assertion that he would have proceeded to trial if he had been advised that his guideline range was life. "Although it carries some probative value, such a statement suffers from obvious credibility problems and must be evaluated in light of the circumstances the defendant would have faced at the time of his decision." **Id.** at 475.

Although petitioner was misinformed about the application of the Sentencing Guidelines, he was informed of the potential maximum sentence he faced during his plea hearing. "As the Fourth Circuit has explained, where the court, in the Rule 11 colloquy, informs the defendant of the potential sentence he faces and the defendant states he understands that fact, any misinformation provided to defendant by his counsel is deemed

9

'corrected' such that it no longer prejudices petitioner's decision to plead guilty. ***United States v. Foster***, 68 F.3d 86, 87–88 (4th Cir.1995)." ***Salgado v. United States***, Civ. A. No.  3:05-CV-64, 2008 WL 509317, at *5 (N.D. W.Va. Feb. 22, 2008)(Bailey, J.); *see also* ***United States v. Lambey***, 974 F.2d 1389, 1395 (4th Cir. 1992) (*en banc*), *cert. denied*, 512 U.S. 1060 (1994) ("if the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant.").

Here, petitioner appeared before the undersigned on June 20, 2019.  Near the beginning of the hearing, the undersigned reviewed the sentence petitioner faced:

> THE COURT: . . . Now, Mr. Crawford, the maximum penalty for the violation of – for this – for the counts, and it would be for each one – is imprisonment of not less than 10 years, or life in prison; a fine of $250,000, and a term of 5 years or lifetime supervised release.
> So is – Mr. Perri, is that a mandatory minimum of 10 years – is that correct?
> MR. PERRI: It is, Your Honor.
> THE COURT: Okay
> What that means, Mr. Crawford, is that there is a mandatory minimum of incarceration of not less than 10 years. It could be to life, depending on how the judge sentences.
> Now, Mr. Crawford, have you had an opportunity to review this Information that I have just gone over with you? Have you had the opportunity to review it with your attorney, Mr. Delgatti?
> THE DEFENDANT: Yes, sir.

[Doc. 37 at 7–8].  Later in the hearing, the undersigned went over the role the presentence investigation report compiled by the probation officer would play in the sentencing, and informed petitioner that the report would include recommendations about the offense level in his case.  The undersigned then explained:

> THE COURT: Now, do you understand that the sentence imposed by the Court may be different from any estimate Mr. Delligatti may

10

>    have given to you, or what you thought it would be?
>    THE DEFENDANT: Yes, sir.
>    THE COURT: And do you also understand the Court must calculate the applicable advisory sentence guidelines, consider that range, and consider possible departures under the sentencing guidelines, and other factors?
>    THE DEFENDANT: Yes, sir.
>    THE COURT: Do you understand the Court is not bound by the advisory guideline range, and it does have the authority to impose a sentence that is more severe or less severe than the sentence called for by the Guidelines?
>    THE DEFENDANT: Yes, sir.

[Id. at 57–58]. Petitioner was clearly made aware that the sentence he faced was potentially life imprisonment and that his sentence may not match what his defense counsel had predicted; he indicated that he understood.

Petitioner argues that "[n]o rational defendant enters a plea of guilty that will result in a life sentence under the Guidelines, except in a death-eligible case." [Doc. 52 at 13]. But as set forth above, petitioner understood he was facing a potential life sentence and that the sentence might be different from defense counsel's prediction. Similarly, petitioner points to **Hammond v. United States**, 528 F.2d 15 (4th Cir. 1975) for the proposition that this kind of incorrect advice about sentencing is prejudicial. In **Hammond**, the defendant was incorrectly advised that he faced a 90 or 95-year sentence, rather than at most a 55-year sentence; he therefore took a guilty plea erroneously believing that the plea might save him 60 or 65 years rather than 30. *Id*. at 18. However, in this case, petitioner was informed of the maximum sentence he faced. In **Hammond**, in contrast, the Court did not correct defense counsel's error; in fact,

>    When he was arraigned on August 14, 1972, the clerk of the district court informed Hammond that he faced a maximum sentence of 20 years on each of the simple bank robbery counts, 25 years on each of the armed bank robbery counts, and 5 years on the conspiracy count. The information thus given him could well have led him to believe that he faced a total maximum

sentence of 95 years if he pled not guilty and was convicted on all counts. *Id*. at 16.  See also **United States v. Woodson**, 422 F. App'x 295, 297 (4th Cir. 2011) (unpublished) (finding **Lambey**, rather than **Hammond**, controlled where "counsel failed to provide advice, but the court corrected this failure by providing Woodson with the correct information during the Rule 11 coloquy.").

Petitioner similarly cites to **Tolliver v. United States**, 563 F.2d 1117 (4th Cir. 1977), in which the Court found that defendant did not receive constitutionally adequate assistance of counsel when he was given incorrect advice about a plea agreement. Tolliver's attorneys incorrectly told him that he could be subject to a doubling of his sentence due to his prior record.  But, again, unlike **Tolliver**, the incorrect advice given to Crawford was remedied when he was informed of the maximum sentence he faced during his plea hearing.

Because petitioner was informed of the potential maximum sentence he faced and indicated that he understood, the undersigned finds that he was not prejudiced by his plea counsel's mistaken advice.  Accordingly, petitioner is unable to meet the prejudice prong of **Strickland**, and his motion should be denied.

### V.     RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [**Civil Action Number 1:21-CV-114 Doc. 1; Criminal Action Number 1:19-CR-35 Doc. 44**] be **DENIED** and **DISMISSED with prejudice**.

Within fourteen days after service of this Report and Recommendation, the petitioner may file with the Clerk of this Court, **specific written objections, identifying**

**the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

**DATED**:  September 7, 2022.

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE